**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SERVICE EMPLOYEE INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND et al., | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ARISTA MANAGEMENT INC. d/b/a QUALICARE NURSING HOME INCORPORATED, | ) ) ) |
| | ) |
| Defendant. | ) |

Civil Action No. 05-cv-01606(RJL)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Service Employees International Union National Industry Pension Fund ("Pension Fund") and the Pension Fund's Boards of Trustees (collectively "Plaintiffs" submits this Memorandum of Law in support of their Motion for Summary Judgment.

**STATEMENT OF THE CASE**

This is an action to collect delinquent contributions owed to a multi-employer pension fund by a contributing employer under the Employee Income Retirement Security Act of 1974, as codified, 29 U.S.C. § 1001 *et seq.*, and Section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) ("LMRA"). The Plaintiff is the Service Employees International Union National Industry Pension Fund (the "Fund" or "Plaintiff"). The Defendant is Arista Management Inc., a nursing home company that does business under the name Qualicare Nursing Home Incorporated ("Qualicare" or "Defendant").

Qualicare is a signatory to a collective bargaining agreement ("CBA") with SEIU Local 79,

a union that is the collective bargaining representative of the employees in five of Qualicare's departments. Under the terms of the CBA, Qualicare must make monthly contributions to the Fund for all hours paid to the employees who are covered under the CBA.

This suit arises from an audit conducted by the Fund on October 4 through October 7, 2004. The Fund conducted the audit pursuant to authority provided through the Fund's Trust Agreement and Collection Policy, which are binding on Qualicare under the CBA. The purpose of the audit was to verify the accuracy of the reports submitted to the Fund by Qualicare and to verify that Qualicare paid the full amount required under the CBA. Because benefits are determined in part by the amount of contributions made on behalf of bargaining unit members, the Fund conducts audits to ensure that all covered employees obtain their full pension credit.

The audit conducted by the Fund on Qualicare in October 2004 examined the period from January 2000 through December 2003. It revealed that Qualicare under reported hours paid to employees and under reported amounts owed in the amount of $28,801.39. In addition, under the term's of the Fund's Trust Agreement and Collection Policy, Qualicare was obligated to pay interest on the delinquent contribution amounts, the audit costs, and a liquidated damages penalty.

After numerous requests, Qualicare failed to pay any of the amounts owed. On August 11, 2005, the Fund commenced the instant suit. The Complaint asserted a single claim to recover, under Section 515 of ERISA and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), 1145, the delinquent contributions uncovered by the audit of October 2004, along with interest, liquidated damages, attorney's fees, and audit costs which are due under the Fund's Trust Agreement, its Collection Policy, and 502(g)(2) of ERISA, as codified, 29 U.S.C. § 1132(g)(2). The Defendant answered on September 13, 2005.

On January 18, 2006, with leave of the Court and the Defendant's consent, the Fund filed a

First Amended Complaint (Doc. 9), which made only technical amendments to its pleading.  The

Defendant again answered on January 20, 2006.  The Fund now submits the instant motion for

summary judgment on the claim asserted in the First Amended Complaint.

## SUMMARY JUDGMENT STANDARD

The Court must award summary judgement where there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(b).  Once the

moving party presents evidence that entitles the movant to summary judgment as a matter of law,

the nonmoving party must introduce evidence to raise a genuine factual issue for trial.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-249 (1986).  Whether a genuine issue as to any material fact

exists is determined by whether the evidence is such that the finder of fact could reasonably find in

favor of the nonmoving party.  *Anderson*, 477 U.S. at 248.  To survive summary judgment, the

nonmoving party must be able to support its case with more than "a scintilla of evidence."

*Thompson v. Potomac Electric Power Co.*, 312 F.2d 645, 649 (4th Cir. 2002).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).

## PLAINTIFFS' STATEMENT OF UNDISPUTED FACT

### I.    *Background*

1.    The Fund is a multi-employer jointly administered labor-management pension fund

established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Fund is an

employee pension benefit plan within the meaning of Sections 3(2) and 3(3) of ERISA, 29 U.S.C.

§§ 1002(2) and (3), and is maintained for the purpose of providing retirement and related benefits to eligible participants and their beneficiaries. The Fund is also a multi-employer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  *See* Aff. of Lori Wood, dated March 24, 2006, (hereinafter "Wood Aff.") ¶ 3.

2.    The Fund's Board of Trustees have discretion over the management of Fund assets and benefits and therefore are fiduciaries within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).  The members of the Fund's Board of Trustees and have brought this action on the Fund's behalf.   *See* Wood Aff. ¶ 4.

3.    Defendant Arista Management Inc., does business as Qualicare Nursing Home, Inc. Qualicare is incorporated in the State of Michigan and has a mailing address of 4000 Town Center, Suite 380, Southfield, Michigan 48075.  *See* Wood Aff. ¶ 5.

4.    Service Employees International Union Local 79 ("Local 79") is and has been the exclusive collective bargaining agent for all of Qualicare's dietary, housekeeping, maintenance, and nursing assistant employees at 695 East Grand Boulevard, Detroit, Michigan during all times relevant to this action.  *See* Wood Aff. ¶ 6.

5.    Local 79 and Qualicare are parties to a collective bargaining agreement ("CBA" or "Agreement") covering Qualicare's dietary, housekeeping, maintenance, and nursing assistant employees.  *See* Wood Aff. ¶ 7.

6.    There are three CBAs that cover the period from January 2000 through December 2003.  The first agreement was effective from May 1, 1998 through April 30, 2001.  The CBA expressly provided that it would be renewed from year to year thereafter unless either party gave the other party written notice of an intention not to renew.  Pursuant to this provision, the CBA was

renewed for the period of May 1, 2001 through April 30, 2004 and, except for certain wage increases, the terms of the agreement remained the same. In 2004, the parties again renewed the agreement. Certain provisions pertaining to wages and the pension contributions were updated by adding appendices to the agreement. *See* Aff. of Mariam Gibbs, dated March 24, 2006, (hereinafter "Gibbs Aff.") ¶ 9.

7.     Under all agreements, Qualicare's pension contribution obligation remained the same for the period from January 2000 through December 2003. The pertinent provisions, which are found in an appendix to the agreement, provide as follows:

> Section 1.  Coverage.  The Employer agrees to make periodic contributions on behalf of the employees covered by this Collective Bargaining Agreement to the SEIU National Industry Pension Fund (hereinafter, "Fund") in the amounts specified in section 3 below.
> . . . .
> Section 3.  Contributions.
> (a)(1)  As of May 1, 1999, the Employer agrees to contribute to the Fund an additional $.10 (10 cents) per paid hour (total $.20 per hour) for all employees covered by the Agreement, from the employee's initial date of employment (or any period up to but not in excess of one (1) year of employment) or May 1, 1999, which ever is later. Effective January 1, 2005, the Employer agrees to contribute to the Fund an additional $.10 (10 cents) per paid hour (total $.30 per hour).[1]

*See* Wood Aff., Ex. A, Appendix "Pension"; Gibbs Aff. ¶ 10.

8.     The Agreement provides that Defendant shall pay required contributions to the Fund on or before the fifteenth day of the month following the period for which contributions are due, and that Defendant shall transmit together with the contributions a remittence report containing such information as may be required by the Trustees of the Fund. *See* Wood Aff. ¶ 9.

---

[1]The term "hours paid," as opposed to "hours worked," indicates that contributions must be made for holidays, vacation, and sick days.

9.      The Agreement further provides that Defendant accepts and agrees to be bound by the terms and provisions of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), and by all resolutions and rules adopted by the Trustees pursuant to their powers under the Trust Agreement, including collection policies. *See* Wood. Aff. ¶ 10.

10.      Pursuant to their authority under the Trust Agreement, the Trustees have adopted a Collection Policy.  The Trust Agreement provides that, along with the employer's monthly contributions, an employer shall submit complete remittance reports to the Fund.  The remittance report must contain the names of each covered employee and the number of hours worked for each employee during the reporting month.  The information is necessary in order for the Fund to properly credit each employee with the appropriate amount of pension credit and to verify that the employer has remitted the appropriate amount of contributions for the reported hours.  The Fund relies, in the first instance, on the employer to properly calculate, report, and remit the appropriate contributions to the Fund.  *See* Wood Aff. ¶ 11, 12.

11.      The Trust Agreement and Section 5(2) of the Fund's Collection Policy provide that an employer delinquent in its contributions to the Fund is liable for interest at the rate of ten percent (10%) per annum, liquidated damages equal to five percent (5%) of the delinquent contribution prior to the commencement of legal action and thereafter equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions, costs of an audit, and attorneys' fees and costs.  *See* Wood Aff. ¶ 13.

12.      Article V, Section 5.1(14) of the Trust Agreement and Section 4 of the Collection Policy provide that the Fund has the authority to review the payroll and other pertinent records of any employer to determine whether the employer has reported and paid the correct amount of

contributions to the Fund.  *See* Gibbs Aff. ¶ 6; Wood Aff. ¶ 14.

**II.    *The Audit***

13.    Pursuant to this authority, on May 17, 2002, the Fund conducted a random audit of Qualicare to verify the accuracy of the remittance reports that it provided to the Fund.  That audit found substantial under reporting of amounts that Qualicare owed to the Fund under the terms of the CBA.  As a result of this under reporting, the audit recommended that the Fund conduct a complete audit of the employer.  *See* Gibbs Aff. ¶ 7.

14.    The Fund followed that recommendation, and from October 4, 2004 through October 7, 2004, Mariam Gibbs, a Fund auditor, conducted an complete audit of the employer's payroll records for the period from January 2000 through December 2003.  *See* Gibbs Aff. ¶ 8.

15.    The payroll for Qualicare is administered in house using MDI-Management Data Information.  The bookkeeper at the site prepares the remittance reports each month on a cash basis.  Qualicare has nineteen payroll departments.  Five of the departments are covered by the CBA.  Those five have the following department codes:  122-Aids; 501-Dietary, 601-Plant and Maintenance, 611-Housekeeping, and 622-Laundry.  *See* Gibbs Aff. ¶ 9.

16.    In the course of the audit, Ms. Gibbs reviewed the employer's payroll registers to determine the Employer's actual "Required Hours" as outlined in the CBA based upon the information in the payroll registers.  At the time of the audit, the hours that the Employer reported on the remittance reports it submitted from January 2000 through December 2003 already were organized into spreadsheets on Ms. Gibbs' laptop.  After entering in the information she obtained from the Employer's payroll records, Ms. Gibbs compared that information with the information that the Employer had reported on its remittance reports.  Under payments and/or overpayments were

calculated based upon the contribution rate stated in the applicable CBA. *See* Gibbs Aff. ¶ 12.

17.     Upon reviewing the payroll registers, Ms. Gibbs determined that several employees listed in the various reportable departments were not reported to the Fund but, as members of the covered bargaining unit, should have been reported. She also determined that for all years examined "paid" hours were not accurately reported. *See* Gibbs Aff. ¶ 13.

18.     With respect to the issue of unreported employees, Ms. Gibbs gave a list to Diane Pacella, an employee of Qualicare, requesting the reason, if any, why these employees were not reported to the Fund. Ms. Pacella's response indicated that some of the unreported employees were supervisors, and others had not worked through the sixty-day probationary period that precedes an employee's coverage under the CBA. Nevertheless, many were improperly omitted from the reports. Any employees who were properly not reported were excluded from the audit's findings regarding variances between the reported and required hours. *See* Gibbs Aff. ¶ 14.

19.     The audit findings are set out in two documents. The first is a spreadsheet report generated by the payroll auditor. The spreadsheet is organized according to each year examined, starting with 2000. Each year examined is divided into three sections: The first section, labeled "Reported Hours," provides the hours that the employer reported to the Fund for each month of the year. The second section, labeled "Required Hours," provides the hours that the employer was required to report based upon the CBA and the employer's payroll records. The third section, labeled "Variance Under (Over)," provides the differences between what the employer reported and what the audit determined the employer was required to report. *See* Gibbs Aff. ¶ 15 & Ex. "A."

20.     The conclusions from the audit were as follows: In 2000, Qualicare under reported hours to the Fund in the amount of 30,458.44 hours resulting in an underpayment of $6,091.69. In

2001, Qualicare under reported hours in the amount of 34,893.11 hours resulting in an underpayment of $6,978.62. In 2002, Qualicare under reported hours in the amount of 34,498.07 hours resulting in an underpayment of $6,897.81. In 2003, Qualicare under reported hours in the amount of 44,166.34 hours resulting in an underpayment of $8,833.27. The total due for 2000 to 2003 was $28,801.39.[2] *See* Gibbs Aff. ¶ 16 & Ex. "B."

## III.    *Qualicare's Failure to Pay the Amounts Found Due in the Audit*

21.    On or about January 27, 2005, the Fund notified Defendant of the audit findings and demanded that Defendant pay the Fund the contributions owed, plus interest, liquidated damages, and audit costs, by February 15, 2005. On or about April 4, 2005, and again on or about June 22, 2005, the Fund notified Defendant that no payment or response had been received, and repeated its demand that Defendant pay in full the amounts due pursuant to the audit. *See* Wood Aff. ¶ 16.

22.    Despite repeated requests from both the Fund and its counsel, Defendant failed and refused to pay the contributions Defendant owed to the Fund for the months of January 2000 through December 2003 as discovered by the Fund's audit of Defendant's payroll records. *See* Wood Aff. ¶ 18.

23.    In 2003, the Fund filed a separate action against Arista Management, Inc., d/b/a Qualicare Nursing Home, Inc., the Defendant herein. That action was filed in the United States District Court for the Eastern District of Michigan under the caption *Service Employees International Union National Industry Pension Fund, et al. v. Arista Management Inc. d/b/a Qualicare Nursing Home Incorporated*, Civil Action No. 2:03-74199 (hereinafter, the "Michigan Lawsuit"). In that

---

[2]This amount includes deductions for $75.58 in overpayments discovered by the audit. *See* Gibbs Aff., Ex. A & B.

action, the Fund sought delinquencies attributable to certain months within same the time period from which the claims at issue here arise. *See* Aff. of Joshua Grant, dated March 24, 2006, (hereinafter "Grant Aff.") ¶ 4.

24.    A Consent Judgment was entered in the Michigan Lawsuit on July 14, 2005. The Consent Judgment resolved all of the Fund's claims for delinquent contribution for the months of June, July, November and December 2000, including the amounts sought as a result of the Fund's audit of October 2004. Consequently, in the instant action, the Fund seeks to recover all the contributions that the Fund's October 2004 audit discovered were due, except for contributions arising from June, July, November, and December 2000. *See* Grant Aff. ¶ 5.

25.    After removing the contributions due for June, July, November, and December 2000, Qualicare owed $26,741.91 in contributions that were identified by the Fund's audit as owed but not paid.[3] *See* Grant Aff. ¶ 6.

26.    Additionally, under ERISA, the Fund's Trust Agreement, and its Collection Policy, Qualicare owes interest and liquidated damages. The Trust Agreement and Section 5(2) of the Fund's Collection Policy provide that an employer delinquent in its contributions to the Fund is liable for interest at the rate of ten percent (10%) per annum, liquidated damages equal to five percent (5%) of the delinquent contribution prior to the commencement of legal action and thereafter equal to the greater of interest on the delinquent contributions or twenty percent (20%) of the delinquent contributions, costs of an audit, and attorneys' fees and costs. *See* Grant Aff. ¶ 7; Wood Aff. ¶ 13 & Ex. C.

---

[3]This amount includes deductions for$74.58 in overpayments identified in the audit. *See* Grant Aff. ¶ 6.

27.    Excluding the delinquencies from June, July, November, and December 2000, the interest that has accrued on the delinquencies identified by the Fund's audit from the date of the delinquency through March 24, 2006 amounts to $10,508.47.  Because $10,508.47, the amount of interest, is greater than $5,348.18, which is 20% of the amount of the delinquency, the Fund is entitled to double interest.  *See* Grant Aff. ¶ 8.

28.    The testing fee related to the audit amounted to $1,174.60.  *See* Wood Aff., ¶ 16 & Ex. D.

29.    The total amount due to the Fund is $48,933.44, plus attorney's fees.  Grant Aff. ¶ 9.

## ARGUMENT

**I.    *Summary Judgment Should be Granted***

**A.    *Fund Is Entitled as a Matter of Law to $26,741.91 in Delinquent Contributions***

Section 515 of ERISA, 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

ERISA § 515; 29 U.S.C. § 1145.  It is well-settled that this provision not only requires employers to make timely contributions to multiemployer funds, like the Plaintiff, but it also permits multiemployer funds (like the Plaintiff) to privately enforce an employer's contribution obligation through an action to recover any delinquent or unpaid contribution that is owed.  *See Int'l Bhd. of Painters & Allied Trades Union v. George A. Kracher, Inc.*, 856 F.2d 1546, 1547 (D.C. Cir. 1988).  Furthermore, it is clear that Section 515 limits an employer's defenses to a suit brought by Fund

- 11 -

trustees to recovery delinquent contributions:

> When the trustees of a pension plan created pursuant to a collective
> bargaining agreement sue an employer for contributions required by
> the plan, the employer may not defend on the ground of union
> misconduct in negotiating the agreement. If it means nothing else,
> section 515 means that, at least when the Trustees are not implicated
> in the alleged misconduct, their suit cannot be thwarted by defenses
> not apparent from the face of the Agreement.

*Bituminous Coal Operators' Ass'n v. Connors*, 867 F.2d 625, 634 (D.C. Cir. 1989).

Here, the language of the CBA is unambiguous. It requires Qualicare to make contributions to the Fund at the rate of $.20 per hour paid to employees covered under the agreement. *See* Wood Aff., Ex. A, Appendix "Pension"; Gibbs Aff. ¶ 10. Furthermore, the CBA clearly binds the employer to the Plan's Trust Agreement, which requires that contributions be made on or before the fifteenth day of the month following the period for which contributions are due. *See* Wood Aff. ¶ 9. Because the validity of the CBA and the employer's obligation are clear on face of the CBA, there can be no dispute regarding Qualicare's obligation to contribute.

The law also clearly establishes a multiemployer fund's right to audit an employer pursuant to the terms of its trust agreements and related policies. *See Cent. States v. Cent. Transp.*, 472 U.S. 559, 581 (1985); *Bd. of Trs. of the Hotel & Rest. Emples. Local 25 v. Jpr, Inc.*, 136 F.3d 794, 797-798 (D.C. Cir. 1998). The Fund's authority to audit employers is clearly established in Article V, Section 5.1(14) of the Trust Agreement and Section 4 of the Collection Policy, *see* Gibbs Aff. ¶ 6, and therefore also is not susceptible to dispute.

Pursuant to its authority under the Trust Agreement, the Fund conducted an audit in October 2004. The auditor's review of Qualicare's payroll records revealed that Qualicare did not timely report and contribute all amounts owed under the CBA from January 2000 through December 2003.

Instead, Qualicare's payroll records showed that Qualicare under reported hours and that Qualicare failed to timely contribute $28,801.39[4] in contributions that were due and owing during the period.

The amount of delinquencies identified in the audit also are not in dispute. At no time has Qualicare presented the Fund with any question or quarrel regarding how the audit was conducted, nor has it ever disputed any aspect of the audit's conclusions. Accordingly, the audit's findings establishes Qualicare's liability under Section 515 of ERISA. As a matter of law, the Fund is entitled to recover the amount identified in the audit, less the amounts that the employer paid as part of the Consent Judgment in the Michigan Lawsuit. This amount is $26,741.91. *See* Grant Aff. ¶ 6. The Fund, therefore, is entitled to summary judgment on the employer's liability for $26,741.91 in delinquent contributions.

### B.    *The Fund is Entitled as a Matter of Law to $10,508.47 in Interest*

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> > (A)    the unpaid contributions, [and]
> > (B)    interest on the unpaid contributions,
> >         . . . .
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1954.

ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).

The Fund's action against Qualicare is brought under § 515. Under the unambiguous

---

[4]This amount includes deductions for $75.58 in overpayments discovered by the audit. *See* Gibbs Aff., Ex. A & B.

language of Section 502(g)(2), therefore, the Fund is entitled to interest on the delinquent contributions identified by the audit.  *See Local 25*, 136 F.3d at 797-798.  Interest on these delinquencies through March 24, 2006, amount to $10,508.47.[5]  *See* Grant Aff. ¶ 8.  Accordingly, the fund is entitled to summary judgment on its claim for $10,508.47 in interest.

### C.    *The Fund is Entitled as a Matter of Law to Double Interest*

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> . . . .
> (B)    interest on the unpaid contributions, [and]
> (C)    an amount equal to the greater of:
>> (i)    interest on the unpaid contributions, or
>> (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under sub-paragraph (A) ….

ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).

The Fund's action against Qualicare is brought under § 515.  Under the unambiguous language of Section 502(g)(2), where the amount of interest is greater than 20% of the amount of the delinquency, the Fund can recover the amount of interest twice, i.e., double interest. *See Local 25*, 136 F.3d at 797-798.  Here, $10,508.47, the amount of interest, is greater than $5,348.18, which is 20% of the amount of the delinquency.  Consequently, an award of double interest is required under the statute.  Accordingly, the Fund is entitled to summary judgment on its claims for an additional

---

[5]This amount excludes the amounts settled under the prior Consent Judgment.  *See* Grant Aff. ¶ 8.

- 14 -

award of $10,508.47 as double interest.

**D.    *The Fund is Entitled as a Matter of Law to an Award of Attorney's Fees***

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> . . . .
>
> (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E)    such other legal or equitable relief as the court deems appropriate.

ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).

The Fund's action against Qualicare is brought under § 515.  Thus, the Fund is entitled as a matter of law to a mandatory award of attorney's fees in this case.  *See Local 25*, 136 F.3d at 797-798.  Pursuant to Federal Rule of Civil Procedure 54(d), the Fund will submit its showing in support of a reasonable attorney's fee award following the Court's ruling on the summary judgment motion.

**E.    *The Fund is Entitled to $1,174.60 as Auditing Costs***

Where a Fund's trust agreement requires an employer to "to pay routine auditing fees, ERISA empowers the Trustees to enforce that requirement." *Local 25*, 136 F.3d at 798 (citing *Iron Workers District Council v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995)).

The Fund's Collection Policy plainly requires an employer to reimburse the Fund for the costs of an audit.  Section 1(4) and Section 4(10)(d) of the Collection Policy provide for the collection of a testing fee from the employer.  The testing fee of the audit conducted on Qualicare in October 2004 was $1,174.60.  As a matter of law, the Plaintiff is entitled to recover $1,174.60 as

- 15 -

a testing fee for the audit.

## CONCLUSION

Based upon the foregoing, the Plaintiffs' motion for summary judgment is due to be granted.

Judgment in the amount of $48,933.44 should be entered, with leave given for Plaintiff to submit

a showing in support of a reasonable attorney's fee award in this action.


Dates: March 24, 2006

                                            /s/

                                        Thomas J. Hart
                                        Slevin & Hart, P.C.
                                        1625 Massachusetts Avenue, NW
                                        Suite 450
                                        Washington DC 20036
                                        (202) 797-8700 (tel)
                                        (202) 234-8231 (fax)

                                        Attorneys for Plaintiff