## RESTATED TRUST AGREEMENT AS OF JANUARY 1, 2000 OF THE SERVICE EMPLOYEES INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND

TRUST AGREEMENT made and entered this _____ day of July, 2000, by and between ANDREW L. STERN, CHARLES RIDGELL, MIKE GARCIA, SHARLEEN STEWART, ROD BASHIR of the SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO C.L.C., ("International") on behalf of the International Executive Board thereof and as Union Trustees and WILLIAM F. STUHLBARG, JOHN J. SHERIDAN, EDWARD J. MANKO, JESSE LINZER, LEE CRETAROLO as Employer Trustees (hereinafter collectively referred to as the "Trustees").

### WITNESSETH:

WHEREAS, at the 13th General Convention of the International a resolution was adopted concerning the establishment of a pension fund for the benefit of employees ("Employees") covered by collective bargaining agreements with certain locals of the International ("Locals") and employers who have executed or will execute collective bargaining agreements with the Locals or International and amendments thereto requiring periodic payments by such employers to such Pension Fund ("Employers"); and

WHEREAS, in order to effectuate the purposes of the 13th General Convention, this Trust Agreement ("Agreement") was entered into by the International and Employers and their respective trustees on May 20, 1968, which Agreement established a trust fund which is known as the Service Employees International Union National Industry Pension Fund (hereinafter referred to as the "Fund") which Fund has been used and is to be used in the manner hereinafter set forth in this Agreement; and

WHEREAS, the parties to this Agreement have amended same effective August 15, 1968, September 6, 1973, January 1, 1976, October 12, 1977, November 30, 1983, January 17, 1990, February 8, 1991 and January 14, 1992.

THEREFORE, the Trustees now enter into this Agreement for the purposes of further amending this Agreement and consolidating into a single document all of the provisions of the Agreement and all of its amendments thereto; the parties agree as follows:

### ARTICLE I

1.1     The Trustees shall continue to administer, one or more pension plans ("Plan") on behalf of the said Employees and shall hold in trust all assets which shall be used for the exclusive purpose of providing benefits to Employees and their beneficiaries ("Participants") as decided by the Trustees,

and shall further provide the means for defraying reasonable expenses of administering and operating the Plan in accordance with this Agreement.

1.2    The Fund shall comprise the entire assets derived from employer contributions made to or for the account of this Fund under agreements requiring contributions to the Fund together with any and all investments made and held by the Trustees, or monies received by the Trustees as contributions or as income from investments made and held by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Agreement.

1.3    The terms used herein which are also used in the Plan shall have the respective meanings ascribed thereto by the provisions of the Plan.

1.4    The said Plan is hereby made a part of this Agreement.

## ARTICLE II

2.1    The terms and provisions of both this Agreement and the Plan shall be binding upon the Trustees, Employers, Participating Local Unions and Plan Participants as set forth in this Agreement and in the Plan.

## ARTICLE III

3.1    An Employer shall mean one who is accepted by the Trustees for participation in the Fund and may include employers who have collective bargaining agreements with the International or with local unions affiliated with the International, as well as local unions and other organizations affiliated with the International and trust funds sponsored by the International or organizations affiliated with the International. Each Employer shall contribute to the Fund the required contributions and shall make such reports to the Fund as may be required by the Trustees.

3.2    The Trustees shall have the power to assess against Employers whose contributions are received by the Fund after the date when such contributions were due, an amount in addition to such contributions, as liquidated damages (which said charge shall not be deemed to be a penalty) as the Trustees deem appropriate, provided, however, that any such charge shall be assessed in a uniform and non-discriminatory manner.

## ARTICLE IV

4.1    The Trustees shall pay out of the Fund the benefits provided for in the Plan.

## ARTICLE V

5.1    In the administration of the Trust, the Trustees are authorized and empowered in their

sole and absolute discretion:

5.1 (1) To invest and reinvest the Fund, and to keep same invested in such property, real or personal, tangible and intangible, as they shall determine, whether or not such investments and reinvestments are then authorized to be made by fiduciaries under applicable law, including but not limited to, bonds, stocks (including stocks of or interests in mutual funds or so-called "investment trusts"), securities, choses-in-action, debentures, notes or other evidence of indebtedness, mortgages on real or personal property, wherever situated (including any part interest in a bond or mortgage whether insured or uninsured).

5.1 (2) To sell, at public or private sale, and for such prices and upon such terms as they shall determine, any or all property, real or personal, tangible or intangible, at any time held by them.

5.1 (3) To permit to remain uninvested, and/or to deposit in savings and/or other banks, for such periods as they shall determine, any monies at any time received or held by them.

5.1 (4) To join in and to dissent from and/or to oppose any agreement, merger, consolidation, reorganization, liquidation, sale or exchange affecting any corporation or properties in which they may be interested as Trustees, as to accept and hold any property which may be received as a result thereof.

5.1 (5) To deposit any securities and/or other properties with any protective, reorganization or other committee, and to pay a share of the expenses and compensation of any such committee, and to pay any assessments levied with respect to any securities or other properties so deposited.

5.1 (6) To exercise any conversion privileges and/or subscription rights available in connection with the whole or any part of the Fund.

5.1 (7) To vote in person or by proxy on all stocks and other securities at any time held by them, and to delegate discretionary power to any proxies designated by them for such voting.

5.1 (8) To compromise, settle and/or arbitrate any claim of or against the Trust, and to reduce the rate of interest on, to extend or otherwise modify and/or foreclose upon default or otherwise enforce any obligation to the Trust.

5.1 (9) To abstain from enforcing any claim at any time held by them.

5.1 (10) At any time and from time to time, to mortgage, pledge, hypothecate, exchange, partition, and otherwise dispose of any or all property, real or personal, tangible or intangible any time held by them and to lease the same for such terms as they shall determine.

-3-

5.1 (11) To borrow money from any persons, firms, corporations or institutions, upon such terms and conditions as the Trustees shall determine, and for the sums so borrowed, the Trustees may issue their promissory notes or other evidence of indebtedness.

5.1 (12) To register any securities or other property with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity; and to hold in bearer form any securities or other property so that title thereto will pass by delivery, but the books and records of the Trustees shall show that all such investments are part of the Fund.

5.1 (13) To purchase, acquire, receive, retain, administer, surrender or assign any life insurance or annuity contract and pay the premium and exercise the rights, privileges, options and benefits contained therein.

5.1 (14) To examine the payroll and other pertinent records of any Employer whenever such examination is deemed necessary or advisable by them in connection with the proper administration of the Plan.

5.1 (15) To enter into agreements, contracts, and other instruments for the deposit of funds with banks or trust companies and to authorize such depositaries to act as custodians of the funds, whether in case of securities or other property, and to authorize such depositaries to convert, invest and reinvest the funds, entirely or in part, in securities of any kind and nature whatsoever provided that such depositaries obtain such approval, if any, of the Trustees for each such transaction as may be specified by the Trustees in such agreement, contract or other instrument or in a supplement thereto.

5.1 (16) To designate other persons to carry out their fiduciary responsibilities, or any part thereof, to the full extent permitted by the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

5.1 (17) To allocate all or any part of their fiduciary responsibilities for the operation and administration of the Trust and the Plan among any of the named fiduciaries as that term is defined in the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time.

5.1 (18) To retain such accountants, attorneys, actuaries, investment counsel and consultants (who may be accountants, attorneys, actuaries, investment counsel, and consultants to any or all of the Employers, Locals or the International) as they may select.  To the extent permitted by applicable law, the opinion of any accountant, attorney, investment counsel or consultant retained or employed by the Trustee shall be full and complete authority and protection in respect of any action taken, suffered or omitted by the Trustees in good faith and in accordance with such opinion.

-4-

5.1 (19) To employ such persons as they shall deem necessary to effectuate the purposes of the Plan and Trust and compensate them in such matter as the Trustees deem appropriate and to provide benefit programs for such persons.

5.1 (20) To designate, by a written instrument signed by all of them, each or any of them, severally, or any two or more of them, jointly, and/or any one of more other persons severally or jointly, to execute on behalf of all of them documents and other instruments (including but not limited to directions, authorizations and checks) proper, necessary or advisable in order to effectuate the purposes of the Plan, and by a written instrument executed by any six of them, revoke any such designation theretofore made.

5.1 (21) To appoint an Investment Manager or Managers, as that term is defined in the Employee Retirement Income Security Act of 1974, together with any future amendment thereto, to manage (which shall include the power to acquire and dispose of Trust Assets) any assets of the Trust and to delegate to such Investment Manager or Managers all or any part of the investment powers vested in the Trustees by this Trust Agreement, and any Investment Manager so appointed shall acknowledge in writing to the Trustees that he is a fiduciary with respect to the Plan. If any Investment Manager or Managers have been appointed in accordance herewith, then no Trustees shall be liable for the acts or omissions of such Investment Manager or Managers, or be under an obligation to invest or otherwise manage any assets of the Plan which is subject to the management of such Investment Manager.

5.1 (22) Except as otherwise provided herein, to establish such procedures, rules and regulations, not inconsistent with the provisions of this Agreement and the Plan, as shall be necessary to carry out the operation of the Plan and effectuate the purpose thereof.

5.1 (23) To enter into agreements with Trustees of other Pension Plans, providing for merger or joinder or for the exchange of pension credits.

5.1 (24) To purchase insurance to protect the Fund and the Fund's fiduciaries, including themselves collectively and/or individually, against any loss occurring by reason of the act or omission of a fiduciary; provided, however, that such insurance shall be in the form and manner permitted by law.

5.1 (25) If the Trustees determine that it furthers the interests of the Participants of the Trust, to cause the Trust to join or to join on their own behalf, at the expense of the Trust, such educational organizations as they deem appropriate and may attend educational seminars and similar programs of such organizations. The Trustees may be reimbursed by the Trust for all reasonable expenses actually incurred by them in connection with attendance at such seminars and programs.

5.1 (26) To provide for the administration of the Fund, the Trustees in their discretion may appoint a custodian of all or part of the assets of the Fund a bank or trust company organized and doing business under the laws of the United States or of any State, authorized under such laws to exercise trust powers, subject to supervision or examination by Federal or State authority, ("Custodian").

5.1 (27) To transfer to the custody of the Custodian all, or such part as they deem desirable, of the assets of the Fund, and may enter into an agreement(s) with Investment Manager(s), which shall be in such form and contain such provisions as the Trustees may deem appropriate and consistent with the provisions of the Employee Retirement Income Security Act of 1974.

5.1 (28) The foregoing shall be supplemental and not exclusive, and the Trustees shall have all of the general powers of fiduciaries, and in addition, said special powers and all other powers reasonably to be implied therefrom or necessary for the proper exercise thereof. None of such powers shall be construed to limit in any manner any other thereof.

5.1 (29) To do all acts, whether or not expressly authorized in this Restated and Amended Trust Agreement, which the Trustees deem necessary to accomplish the general objectives of the Trust.

5.1 (30) To commingle assets for investment purposes with other qualified plans or funds sponsored by the International.

5.2    The Trustees' or, where Trustee responsibility has been delegated to others, such other persons, shall subject to the requirements of law, be the sole judges of any determination of fact, the standard of proof required in any matter and the application and interpretation of this Agreement and the Plan, and decisions of the Trustees or their deputies shall be final and binding upon all persons dealing with the Trust or claiming any benefit hereunder, except to the extent that such decision is determined by a court or arbitrator having jurisdiction over such matter to be arbitrary or capricious or an abuse of discretion.

## ARTICLE VI

6.1    Any Trustee may resign upon giving thirty days' notice in writing to the remaining Trustees, or such shorter notice as the remaining Trustees may accept as sufficient, in which notice there shall be stated a date when such resignation shall take effect. Such resignation shall take effect on the date specified in such notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

6.1(1)  The Trust and the United States Plan or Plans shall be administered by not less than four (4) Trustees. The Canadian Plan or Plans shall be administered solely by one of the Union Trustees who shall be a resident of Canada, and by one of the Employer Trustees. . The Union Trustees shall be ANDREW L. STERN, CHARLIE RIDGELL, MIKE GARCIA, SHARLEEN STEWART, ROD BASHIR, and their successors designated as hereinafter provided. The Employer Trustees shall be WILLIAM F. STUHLBARG, JOHN J. SHERIDAN, EDWARD J. MANKO, JESSE LINZER, LEE CRETAROLO, and their successors designated as hereinafter provided. The Union Trustee of the Canadian Plan or Plans shall be SHARLEEN STEWART and the Employer Trustee of the . Canadian Plan or Plans shall be WILLIAM F. STUHLBARG.

6.1(2)  In the event there shall be a vacancy in the position of Union Trustee, the successor shall be designated by the International Executive Board. In the event the Fund includes Canadian Employers and Participants one of the Union Trustees shall be a Canadian resident.

6.1(3) In the event that there shall be a vacancy in the position of Employer Trustee, held by LEE CRETAROLO the successor and his Deputy Trustee shall be designated by American Building Maintenance Industries Incorporated, (herein referred to as "ABM") if ABM is an Employer at the time such vacancy occurs. All other Successor Employer Trustees shall be designated by a majority of the then remaining Employer Trustees. In the event of other Employer Trustees vacancies, the remaining Employer Trustees shall designate a Successor Trustee. All Employers who contributed to the Fund in the preceding calendar month shall be notified by first class mail of the identity of the Successor Employer Trustee designated in accordance with the Agreement. If, within 20 days of the mailing of such notice, there is no such objection to such designation from a majority of Employers such Successor Employer Trustee shall be the Employer Trustee with full power and authority to act under this Agreement. In the event that objection from a majority of Employers are received, or in the event that no such Successor Employer Trustee is designated within 180 days after a vacancy exists, or in the event that there is no other Employer Trustee to make the designation in accordance with the foregoing, then all Employers shall be notified in writing of the existence of such vacancy and given an opportunity to nominate a Successor Trustee. Each Employer shall have twenty calendar days after the date of mailing of notice to Employer of the vacancy to designate and notify the Trustees of its nominee. A ballot shall be prepared listing the names of all such nominees which are received by the Fund Administrative Director within twenty (20) calendar days after the mailing of such notice and such ballot shall be distributed to all such Employers. Each such Employer shall have the number of votes equal to the number of Employees for whom that Employer contributed to the Fund in the month immediately preceding the month in which the ballot is mailed to the Employer. The nominee receiving the largest number of votes cast in the date such ballots were mailed by the Fund shall be deemed to be elected Successor Employer Trustee.

6.1(4)  Any Union Trustee may be removed at any time by the filing with the remaining Trustees of a writing signed by the President and Secretary/Treasurer of the International certifying

the removal of such Trustee by resolution of the International Executive Board, and such removal shall become effective immediately upon such filing. Any Employer Trustee may be removed at any time by a majority of votes of the remaining Employer Trustees or by a writing or writings signed by such Employers employing a majority of Employees employed by all Employers, provided, however, that LEE CRETAROLO, and his successors may be removed only by ABM as long as it continues to be an Employer.

6.1 (5) In the case of a vacancy in the office of Union Trustee, or Employer Trustee, the successor shall be designated as herein provided. Upon the filing with the remaining Trustees of a writing signed by the President and/or Secretary/Treasurer of the International, or by action of the remaining Employer Trustees, other Employers or ABM whichever shall be applicable, the designation of such successor Trustee shall become effective immediately upon filing with the remaining Trustees his/her written acceptance of the Trust.

6.2 (1) Each Employer Trustee and each Union Trustee shall be entitled to one vote.

6.2 (2) If at any time there shall be an unequal number of Employer Trustees and Union Trustees serving on the Board of Trustees, the votes of the Trustees on the side having the fewer Trustees shall be increased proportionately so that the total number of votes on each side shall be equal.

6.3    Whether and to what extent any bond or other security shall be required for the faithful performance of the Trustees or any of them or any employee of the Fund, shall be determined by the Trustees, subject to applicable law.

6.4    Each Trustee may designated in writing any other person to act as his/her Deputy. Any such Deputy Trustee shall be bonded to the same extent as the Trustees and shall be clothed with all of the same powers as the Trustee designating the Deputy Trustee. Any action of such Deputy Trustee shall be of the same force and effect as if done by the Trustee. The Deputy Trustee may act only if the designating Trustee is absent.

6.5    With respect to matters concerning changes in any benefit formula, no action shall be taken at any meeting of the Trustees unless all Trustees or a Deputy Trustee shall be present and vote in favor of such action, or, if not present, vote by proxy in favor of such action.

6.6    With respect to all other matters, no action shall be taken at any meeting of the Trustees unless there shall be at least one Trustee present from each side and a majority of Trustees present vote in favor of such action. In instances where there are deputy trustees who are authorized to act for a Trustee, then there must be at least one Union and one Employer Trustee, present and voting. If at any time there shall be an unequal number of Employer Trustees and Union Trustees, or their Deputy Trustees voting, then the votes of the Trustees on the side having the fewer trustees shall be increased proportionately so that the number of votes on each side shall be equal.

-8-

6.7.    Action may be taken by the Trustees without a meeting on any matter by their unanimous written concurrence.

6.8.    The Trustees may, by resolution, adopt such procedures as they deem appropriate for the purpose of approving or adopting decisions relating to investment of trust assets.

6.9.    If the Trustees shall deadlock upon any action involving the administration of the Plan or Fund, or interpretations of the Trust Agreement, the disposition of such action shall, upon the demand of any Trustee, be submitted to arbitration in accordance with applicable rules of the American Arbitration Association, and the decision of such arbitrator shall be final and binding. The arbitrator shall be without power or authority to amend, modify or vary any provision of the Plan or this Agreement.

## ARTICLE VII

7.1    Any controversy or claim made arising out of or relating to a claim for benefits payable by this Plan shall be settled by arbitration in accordance with the Employee Benefit Plan Claims Arbitration Rules of the American Arbitration Association incorporated by reference herein. The decision of the Arbitrator shall be final and binding and judgment upon the award may be entered in any court having jurisdiction thereof.

## ARTICLE VIII

8.1    Either or both of the Plan and the Trust may be terminated at any time by vote of all Trustees and with such effective date as the Trustees may determine. In the event of such termination, to the extent that the assets then remaining in the Fund shall be sufficient and after providing for any administrative expenses, such assets shall be allocated for the purpose of paying benefits (based on Service Credits accumulated prior to the date of such termination) in accordance with the provisions of the Plan.

8.2    In no event shall such termination result in the return or diversion of any part of the Fund to the International or Local, or any Employer.

8.3    Contributions paid to the Fund as a result of a mistake of fact may be returned by the Trustees to such Employer to the extent and within the time permitted by applicable law.

## ARTICLE IX

9.1    To the extent permitted by applicable law, no Trustee shall be liable for any action taken or omitted to be taken by him in good faith, nor for the wrongful acts of any agent, employee,

fiduciary, co-fiduciary or attorney selected by the Trustees, nor for any act or omission of any other Trustee. The fact that such action or omission was advised by counsel employed by the Trustees shall be conclusive evidence of the good faith of such act.

### ARTICLE X

10.1    The Plan has been submitted to the Internal Revenue Service and has been determined to be qualified Plan pursuant to the requirements of the Internal Revenue Code. The Trustees hereby agree to amend the Plan in the future as may be necessary to continue its IRS qualification.

### ARTICLE XI

11.1    The Trustees shall establish and maintain its principal office in Washington D.C., and may maintain offices at other locations of the United States and Canada to service the Employers

### ARTICLE XII

12.1    Any notice given hereunder to any of the Trustees, Locals, Employers, or the International, shall be sufficient if given in writing and delivered to or sent by first class mail, fax or electronic-mail to the addressee at the address on file at the Fund office.

### ARTICLE XIII

13.1    Except to the extent that Federal Law requires a different construction, the respective terms and provisions hereof and of the Plan shall be construed in accordance with the laws of the District of Columbia.

### ARTICLE XIV

14.1    The Trustees hereby accept the Trust and agree to execute the same in accordance with the provisions hereof and of the Plan.

### ARTICLE XV

15.1    This Agreement may be executed in one or more counterparts, and the signature of a party or any counterpart shall be sufficient evidence of his execution thereof.

### ARTICLE XVI

16.1    Any Employer entering into a Standard Participating Agreement or other Participation

-10-

Agreement approved by the Trustees shall be bound by the provisions of this Agreement and of the Plan.

## ARTICLE XVII

17.1    This Trust Agreement may be amended by a majority of the Trustees' votes being cast in favor of any amendment provided, however, that no such amendment shall cause any part of the Fund to be used for or diverted to any other purpose other than the purposes of the Fund provided for in this Agreement.

## ARTICLE XVIII

18.1    The Trustees designated hereunder, and their successors shall be "Named Fiduciaries": as the same are defined in the Employee Retirement Income Security Act of 1974.

IN WITNESS WHEREOF, the undersigned, being all of the Trustees of said Trust Fund, have caused this instrument to be executed on the date appearing opposite their respective names.

Date: 9-28-00

ANDREW L. STERN

Date: 9/28/00

CHARLIE RIDGELL

Date: 9-28-00

MIKE GARCIA

Date: 9-28-00

SHARLEEN STEWART

Date: 9/28/00

ROD BASHIR

Date: 9/28/00

WILLIAM F. STUHLBARG

Date: 9-28-00

JOHN J. SHERIDAN

Date: 9-28-00

EDWARD J. MANKO

Date: 9/28/00

JESSE LINZER

Date: 9-28-00

LEE CRETAROLO

-11-