UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEE INTERNATIONAL UNION NATIONAL INDUSTRY PENSION FUND et al., <br><br>Plaintiffs, <br><br>v. <br><br>ARISTA MANAGEMENT INC. d/b/a QUALICARE NURSING HOME INCORPORATED, <br><br>Defendant. | Civil Action No. 05-cv-01606(RJL) |

### AFFIDAVIT OF MIRIAM GIBBS

MIRIAM GIBBS deposes and declares as follows:

1. I am the Payroll Review Manager of the SEIU National Industry Pension Fund (the "Fund"). I am over the age of eighteen and competent to make this Affidavit. I have personal knowledge of facts and circumstances related to the instant action and described in this affidavit. All documents attached hereto are maintained by the Fund in the ordinary course of its business.

2. The Fund is a multi-employer jointly administered labor-management pension fund. It is maintained for the purpose of providing retirement and related benefits to eligible participants and their beneficiaries. The Fund provides pensions for employees covered by collective bargaining agreements negotiated by SEIU local unions.

3. Defendant Arista Management Inc., does business as Qualicare Nursing Home, Inc. Qualicare is incorporated in the State of Michigan and has a mailing address of 4000 Town Center, Suite 380, Southfield, Michigan 48075.

4. Service Employees International Union Local 79 ("Local 79") is and has been

the exclusive collective bargaining agent for all of Qualicare's dietary, housekeeping, maintenance, and nursing assistant employees at 695 East Grand Boulevard, Detroit, Michigan during all times relevant to this action.

5. The Fund's Trust Agreement provides that an employer shall submit complete remittance reports to the Fund with the employer's contributions. The remittance report must contain the names of each covered employee and the number of hours worked for each employee during the reporting month. The information is necessary in order for the Fund to properly credit each employee with the appropriate amount of pension credit and to verify that the employer has remitted the appropriate amount of contributions for the reported hours. The Fund relies, in the first instance, on the employer to properly calculate, report, and remit the appropriate contributions to the Fund.

6. Article V, Section 5.1(14) of the Trust Agreement and Section 4 of the Collection Policy provide that the Fund has the authority to review the payroll and other pertinent records of any employer to determine whether the employer has reported and paid the correct amount of contributions to the Fund.

7. Pursuant to this authority, on May 17, 2002, the Fund conducted a random audit of Qualicare to verify the accuracy of the remittance reports that it provided to the Fund. The audit found substantial under reporting of amounts that Qualicare owed to the Fund under the terms of the CBA. As a result of this under reporting, the audit recommended that the Fund conduct a complete audit of the employer.

8. The Fund followed that recommendation, and from October 4, 2004 through

October 7, 2004, I conducted an complete audit of the employer's payroll records for the period from January 2000 through December 2003.

9. There are three CBAs that cover the period from January 2000 through December 2003. The first agreement was made and entered into as of the first day of May 1998 and was effective from May 1, 1998 through April 30, 2001. The CBA expressly provided that it would be renewed from year to year thereafter unless either party gave the other party written notice of an intention not to renew. Pursuant to this provision, the CBA was renewed for the period of May 1, 2001 through April 30, 2003 and, except for certain wage increases, the terms of the agreement remained the same. In 2004, the parties again renewed the agreement. Certain provisions pertaining to wages and the pension contributions were updated by adding appendices to the agreement.

10. Under all agreements, Qualicare's pension contribution obligation remained the same for the period from January 2000 through December 2003. The pertinent provisions, which are found in an appendix to the agreement, provide as follows:

> Section 1. Coverage. The Employer agrees to make periodic contributions on behalf of the employees covered by this Collective Bargaining Agreement to the SEIU National Industry Pension Fund (hereinafter, "Fund") in the amounts specified in section 3 below.
> . . . .
> Section 3. Contributions.
> (a)(1) As of May 1, 1999, the Employer agrees to contribute to the Fund an additional $.10 (10 cents) per paid hour (total $.20 per hour) for all employees covered by the Agreement, from the employee's initial date of employment (or any period up to but not in excess of one (1) year of employment) or May 1, 1999, which ever is later.

Wood Aff., Ex. A, Appendix "Pension."

11. The payroll for Qualicare is administered in house using MDI-Management Data Information. The bookkeeper at the site prepares the remittance reports each month on a cash

basis. Qualicare has nineteen payroll departments. Five of the departments are covered by the CBA. Those five have the following department codes: 122-Aids; 501-Dietary, 601-Plant and Maintenance, 611-Housekeeping, and 622-Laundry.

12. In the course of the audit, I reviewed the employer's payroll registers to determine the Employer's actual "Required Hours" as outlined in the CBA based upon the information in the registers. At the time of the audit, the hours that the Employer reported on the remittance reports it submitted from January 2000 through December 2003 already were organized into spreadsheets. After entering in the information I obtained from the Employer's payroll records, I compared that information with the information that the Employer had reported on its remittance reports. Under payments and/or overpayments were calculated based upon the contribution rate stated in the applicable CBA.

13. Upon reviewing the payroll registers, I determined that several employees listed in the various reportable departments were not reported to the Fund. I also determined that for all years examined, all paid hours were not accurately reported.

14. With respect to the issue of unreported employees, I gave a list to Diane Pacella, an employee of the Employer, requesting the reason, if any, why these employees were not reported to the Fund. Ms. Pacella' response indicated that some of the unreported employees were supervisors, and others had not worked through the sixty-day probationary period that precedes an employee's coverage under the CBA. Nevertheless, many were improperly omitted from the reports. Any employees who were properly not reported were excluded from the audit's findings regarding variances between the reported and required hours.

15. My audit findings are listed in two documents. The first is a spreadsheet

report from the audit. The spreadsheet is organized according to each year examined, starting with 2000. Each year examined is divided into three sections: The first section, labeled "Reported Hours," provides the hours that the employer reported to the Fund for each month of the year. The second section, labeled "Required Hours," provides my findings of the hours that the employer was required to report based upon the CBA and the employer's payroll records. The third section, labeled "Variance Under (Over)," provides the differences between what the employer reported and what the audit determined the employer was required to report. A true and accurate copy of the spreadsheet containing the audit's findings is attached hereto as Exhibit "A" and incorporated by reference.

16. My conclusions from the audit were as follows: In 2000, Qualicare under reported hours to the Fund in the amount of 30,458.44 hours resulting in an underpayment of $6,091.69. In 2001, Qualicare under reported hours in the amount of 34,893.11 hours resulting in an underpayment of $6,978.62. In 2002, Qualicare under reported hours in the amount of 34,489.07 hours resulting in an underpayment of $6,897.81. In 2003, Qualicare under reported hours in the amount of 44,166.34 hours resulting in an underpayment of $8,833.27. These findings were recorded in an internal memorandum which the Fund retains in the normal course of its business. The total due for 2000 to 2003 was $28,801.39. A true and accurate copy of the memorandum is attached hereto as Exhibit "B" and incorporated by reference.

Under penalty of perjury, I declare that the foregoing to be true and correct according to the best of my knowledge, belief, or memory.

Dated: 3/24/06

Miriam Gibbs
Payroll Review Manager
SEIU National Industry Pension Fund
1343 L Street, N.W.
Washington, D.C. 20005