# AGREEMENT

## Between

## ALPHA ANNEX NURSING CENTER
## ALPHA MANOR NURSING HOME
## BARTON NURSING HOME, INC.
## EASTWOOD NURSING CENTER
## E. B. JAMES NURSING CENTER
## NEW DETROIT NURSING CENTER
## QUALICARE NURSING HOME
## WESTWOOD NURSING CENTER

## And

## NURSING & CONVALESCENT HOME EMPLOYEES
## DIVISION OF LOCAL 79,
## SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO

TERM:          MAY 1, 2001

THROUGH:       APRIL 30, 2003

| ARTICLE | TITLE | PAGE |
|---|---|---|
| I. | RECOGNITION | 1. |
| II. | CHECK-OFF | 2. |
| III. | HOURS OF WORK | 3. |
| IV. | HOLIDAYS | 5. |
| V. | SENIORITY | 5. |
| VI. | LAY-OFF AND RECALL | 7. |
| VII. | GRIEVANCE PROCEDURE | 8. |
| VIII. | DISMISSALS | 10. |
| IX. | NOTICES TO UNION | 10. |
| X. | VACATIONS | 11. |
| XI. | PAID SICK LEAVE & LEAVES OF ABSENCE | 13. |
| XII. | INSURANCE | 16. |
| XIII. | JOB OPPORTUNITIES | 17. |
| XIV. | GENERAL | 18. |

| XV. | WAGES | 21. |
| XVI. | SUCCESSION | 21. |
| XVII. | MANAGEMENT PREROGATIVES | 22. |
| XVIII. | UNION RECOGNITION | 22. |
| XIX. | HEALTH & SAFETY | 22. |
| XX. | PATIENT CARE | 23. |
| XXI. | SEVERANCE PAY | 23. |
| XXII. | DURATION & AMENDMENT | 23. |

APPENDIX "A" - WAGE SCHEDULE — 23
APPENDIX "B" - LETTERS OF AGREEMENT (Christmas Bonus) — 25
APPENDIX "C" - LETTER OF UNDERSTANDING (Staffing Legislative Efforts) — 26
APPENDIX "D" - November 1983 LETTER OF UNDERSTANDING — 27
APPENDIX "E" - LETTER OF UNDERSTANDING (Short Staffing) — 28
APPENDIX "F" - LETTER OF UNDERSTANDING (Ward Clerk/ Supply Clerk) — 29
APPENDIX "G" - LETTER OF UNDERSTANDING (Restorative Aide) — 30

To: Members of Alpha Annex, Alpha Manor, Barton, Eastwood, E.B. James, New Detroit, Qualicare, Westwood Nursing Home Bargaining Unit Employee's and SEIU Local 79, AFL-CIO members.

Congratulations, on your steadfast approach in negotiations to hold firm to fighting for your rights in keeping this contract agreement under a Master Contract and improving your wages and retro monies.

"Good Luck"

Solidarity,

Joyce Pearson
Business Representative

## AGREEMENT

THIS AGREEMENT made and entered into as of the FIRST DAY OF MAY, 1998, by and between the NURSING & CONVALESCENT HOME EMPLOYEES DIVISION OF LOCAL 79, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, hereinafter referred to as the "Union" and ALPHA ANNEX NURSING CENTER, ALPHA MANOR NURSING HOME, BARTON NURSING HOME, EASTWOOD NURSING CENTER, E. B. JAMES NURSING CENTER, NEW DETROIT NURSING CENTER, QUALICARE NURSING HOME and WESTWOOD NURSING CENTER, hereinafter referred to as the "EMPLOYER."

WITNESSETH. In consideration of the mutual promises and covenants of the parties, hereto, it is hereby agreed as follows:

## PREAMBLE

IT IS THE PURPOSE and intent of the Union and the Employer in entering into this Labor Agreement to set forth their agreement on rates of pay, hours of work, terms and other and conditions of employment so as to promote orderly and peaceful relations between the Union and the Employer.

## ARTICLE I. RECOGNITION

Section 1. The Employer recognizes the Union as the exclusive bargaining agent for all Dietary, Housekeeping, Maintenance, Nursing Assistants; but specifically excluding all administrators, directors of nursing, registered nurses, guards, clerical employees, all licensed practical nurses, drivers and supervisors as defined by the Act, and will bargain in good faith with the Union on all matters of wages, hours and terms and conditions of employment affecting these employees.

Section 2. It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing or tender to the Union the initiation fees and periodic dues that are requirements of Union members and those who are not members on the effective date of this Agreement, shall on the sixtieth (60th) day following the effective date of this Agreement, become and remain members in good standing in the Union or tender to the Union the initiation fees and periodic dues that are requirements of Union members.

It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date, shall on the sixtieth (60th) day following the beginning of such employment become and remain members in the Union; and in the event an employee covered by this Agreement shall refuse and fail to become a Union member, the Employer shall terminate said employee's employment, and in the event the Employer fails to do so, said Employer shall pay to the Union the amount of Union dues and initiation fees that would have been paid by said employee during the period employed by this Employer, subsequent to sixty (60) days from the

date of their hire, or after sixty (60) days from the effective date of this Agreement, whichever date is later, This sum is not and shall not be regarded as a penalty, but as liquidated damages.

Section 3. All new employees hired shall be considered probationary employees until the completion of sixty (60) calendar days from their date of hire. After completion of the probationary period employees shall be considered permanent employees and entitled to the benefits of this Agreement.

## ARTICLE II. CHECK-OFF

Section 1. The Employer will deduct from the first pay of each month the Union dues, initiation fees and other assessments of each employee covered by this Agreement provided the Union has furnished the Employer with signed authorizations.
The Union shall indemnify and save the Employer harmless against any and all claims, demands, suits or other forms of liability that may arise out of or by reason of action taken by the Employer for purposes of complying with this section.

Section 2. The Union will furnish the Employer with a check-off list in duplicate each month indicating thereon the amount due for each employee. The Employer shall add to the check-off lists furnished by the Union the names, addresses, social security numbers and dates of hire of any employees whose names do not appear on the check-off lists furnished by the Union. One copy of the check-off lists furnished by the Union shall be returned with the stipulated amount and the additional amounts due for the added employees to the Union prior to the twentieth (20th) of the month in which the deductions are made.

Section 3. Union Dues Remittance: In the event the Employer does not remit to the Union the dues deducted from employees paychecks as required under this Agreement the Employer shall reimburse the Union for all legal and/or other costs incurred by the Union in collecting such money.

Section 4. Dues Remittance: Company records and payroll deductions: The Company agrees that the Union shall have the right to strike, notwithstanding any provisions of the labor agreement, upon ten (10) days written notice to the Company, for failure of the Company to remit to the Union any Union dues and/or Credit Union deductions during the month in which they are deducted.

## ARTICLE III. HOURS OF WORK

Section 1. The workday shall consist of eight (8) consecutive hours and the workweek shall consist of forty (40) hours. The workweek will begin and end at the end of the midnight shift on Saturday.

Section 2. All hours worked in excess of eight (8) hours in a day or forty (40) hours in one week shall be paid at the rate of one and one-half (1-1/2) times the regular rate of pay.

Section 3. Full-time employees called in to work on their day off shall be paid one and one-half (1-1/2) times their regular rate of pay for all hours worked and shall be guaranteed a minimum of four (4) hours of work or pay therefore at one and one-half (1- times their regular rate of pay, provided the employee Works their other scheduled work days in the same workweek. Call-in work opportunities shall be offered in accordance with Article III, Section 7.

Section 4. An employee working two (2) successive shifts shall be paid time and one-half (1-1/2) their regular rate of pay for the second shift.

Section 5. Employees shall be paid one and one-half (1-1/2) times their regular rate of pay for all work on the seventh (7th) consecutive calendar day of work and for each consecutive day of work thereafter until such employee has a scheduled day off work.

Section 6. The employee has the right to refuse overtime, except in cases of emergencies.

Section 7. The Employer shall utilize the seniority list in the home by job classification to afford every employee the opportunity to receive premium pay work and to distribute same equally among all employees who desire it, except in circumstances beyond the control of the Employer.

Section 8. There shall be no duplication of premium pay for any particular hour of work. In the event an employee qualifies for more than one premium, they shall be paid the highest premium pay applicable.

Section 9. Holidays worked shall be considered as a regular day worked in determining premium pay.

Section 10. Employees shall receive one (1) fifteen (15) minute paid rest period during the first half (1/2) of their workday and one (1) fifteen (15) minute paid rest period during the second one-half (1/2) of their workday. Scheduling of rest periods will be done by the Employer. In the event an employee works during their scheduled rest period, the Employer will reschedule such rest period during the same workday.

Section 11. Employees shall receive a thirty (30) minute paid meal period included within the workday. Scheduling of meal periods will be done by the Employer.

   (a) Employees shall continue to take meal periods on the same basis as permitted on and before November 15, 1975.

   (b) Employer shall provide meals only for employees required to work during emergency situations.

Section 12. The Employer shall post Schedules a minimum of two (2) weeks in advance.

   (a) After the schedules have been posted, no changes can be made by the Employer with less than twenty-four (24) hours notice to the affected employee.

3

(b) Any employee whose schedule is changed by the Employer with notice of forty-eight (48) hours or less, shall be paid one and one-half (1-1/2) times their regular rate of pay for all hours worked on the newly scheduled day or days.

(c) Any request by an employee for a change in the schedule must be made in writing three (3) days in advance and will be made only with the consent of the Employer.

Section 13. Each employee shall be scheduled off work on two (2) weekends per month or be paid at twice (2) their regular rate of pay in lieu of same. For purposes of this Agreement, weekend shall mean Saturday and the following Sunday, or Sunday and the following Monday.

Upon the written consent of the employee, the Employer may schedule the employee off work on Friday and the following Saturday for purposes of compliance with this provision.

Section 14. Employees shall be required to report for work on time as they are scheduled. It is expected that employees will report to their work area immediately after clocking in and shall remain in their work area until the end of their shift. The Company recognizes that from time to time an employee may be late clocking in for their regular shift due to circumstances beyond the control of the employee and on such occasions agrees not to deduct any pay from the first ten (10) minutes for tardiness due to such causes. Employees shall lose pay for reporting to work late and shall be paid authorized overtime on the same following basis:

| | |
|---|---|
| 0 through 6 minutes | No adjustment |
| 7 minutes through 21 minutes | 15 minute adjustment |
| 22 minutes through 36 minutes | 30 minute adjustment |
| 37 minutes through 51 minutes | 45 minute adjustment, etc. |

## ARTICLE IV. HOLIDAYS

Section 1. The following shall be official paid holidays: New Year's Day (January 1) , Dr. Martin Luther King, Jr.'s Birthday (3rd Monday in January) Easter Sunday; Memorial Day (last Monday in May) ; Independence Day (July 4th) Labor Day (first Monday in September); Thanksgiving Day (Fourth Thursday in November); Christmas Day (December 25) : Employee's Birthday; and Employee's anniversary date of employment.

(a) The employee's birthday and/or the employee's anniversary date of employment shall be taken by the employee on the actual date of occurrence.

Section 2. The Employer shall rotate the number of holidays off work and specific holidays off work equally among all employees, with consideration given first to employee requests and second to seniority.

Section 3. Employees who work on a holiday shall be paid one and one-half (1-1/2) times their regular rate of pay for all hours worked in addition to their regular holiday pay. Employees who work on a holiday shall receive a minimum of four (4) hours of work.

4

Section 4. Employees off work on a holiday shall receive holiday pay at their regular rate of pay for the number of hours they regularly work.

Section 5. To be eligible for holiday pay provided in Section 4, an employee must work the holiday, if scheduled to work, and their last scheduled workday before the holiday and their first scheduled workday after the holiday, unless properly excused from work.

Proper excuse shall include death of a person in the employee's immediate family, hospitalization of the employee, or proven accident beyond the employee's control, which prevented the employee from reporting for work.

## ARTICLE V. SENIORITY

Section 1. Facility seniority shall be defined as the calendar length of employment at one of the specific nursing homes which are party hereto, and shall accrue from the last date of hire at that nursing home.

Section 2. All employees who have been hired as full-time employees and are regularly scheduled to work a forty (40) hour week are full-time employees for the purpose of this Agreement.

(a) All employees who have been hired as part-time employees and are regularly scheduled to work less than forty (40) hours a week are part-time employees for the Purpose of this Agreement. Part-time employees shall be paid the wage rate for the respective job classification and shall earn the other benefits of this Agreement, pro rata, based on the ratio of actual hours worked compared to full-time employment.

(b) Temporary employees may be employed by the Employer to perform work for a definite period of time not to exceed ninety (90) calendar days. Employees hired as temporary employees and the Union shall be notified of their status upon employment and the name of the permanent employee being temporarily replaced. Temporary employees will not be entitled to or become subject to any conditions or provisions of this Agreement unless they shall be employed more than ninety (90) days after which they will become members of the Union and covered by this Agreement.

This provision shall not be used to avoid placement of employees in the category of full-time or part-time employee covered under the provisions of this Agreement.

The Employer shall not employ temporary employees so as to displace bargaining unit employees.

Section 3. Seniority shall apply only in the determination of fringe benefits, wages and completion of probationary period and shall be the determining factor when a choice must be

made between employees with the necessary qualifications, unless otherwise provided herein. Seniority cannot be used to displace any other employee of any other facility under any circumstances.

Section 4. Seniority rights shall be lost for any of the following reasons:

(a) Employee quits;

(b) Employee does not report for work on a call-back within three (3) calendar days after being notified by registered mail, exception being extenuating circumstances to be defined by the Employer and the Union at the time the point is at issue;

(c) Employee is discharged for just cause;

(d) Employee fails to return from a leave of absence;

(e) Employee works elsewhere on a leave of absence;

(f) If an employee is laid off for a continuous period of one (1) year or their length of seniority, whichever is greater, and,

(g) Employee is absent from work and does not notify the Employer within three (3) calendar days as to the reason for their absence.

Section 5. On the effective date of this Agreement, each facility which is a party hereto, shall post a seniority list for each Job classification listed in Appendix "A", with the employee's name, classification, date of hire, and whether the employee is full-time or part-time. The seniority list shall be brought up to date by the Employer every six (6) months thereafter.

Employees shall be permitted to challenge the validity of their listed seniority date for up to fourteen (14) calendar days following posting of same, after which time no further challenges shall be made.

Section 6. Employees shall not be required to accept temporary or part-time work in order to retain their seniority.

## ARTICLE VI. LAY-OFF AND RECALL

Section 1. In the event that it becomes necessary to lay-off employees because of lack of work, seniority within each job classification shall determine who will be laid off, -with the most senior employee being the last to be laid off. The number of hours actually worked by part-time employees shall be computed to determine their seniority for purposes of lay-off. In the event two or more employees have identical seniority, actual hours worked shall determine who will be laid off first. Employees shall be recalled to work in the reverse order that they were laid off.

Section 2. For purposes of lay off and recall only, all stewards shall hold top seniority during their term of office. Upon effect of this Agreement, the Union shall notify the Employer, in writing, as to the names of the stewards entitled to top seniority and will thereafter keep the Employer notified, in writing, of any changes.

Section 3. Laid off employees shall be recalled to work before any new employees are hired.

Section 4. The Employer shall not increase the hours worked by any part-time employee or employees, or employ any part-time employees in order to lay-off a full-time employee.

Section 5. An employee to be laid off shall be given a two (2) week notice, in writing, with a copy of such notice given to the steward and the Union, or two (2) weeks pay in lieu of notice, or any combination of either, to meet the above requirement, except as provided below:

> (a) An employee to be laid off for census decline which could not be foreseen or an emergency beyond the control of the Employer, shall be given a three (3) calendar day notice, in writing, with a Copy of such notice given to the steward and the Union, or three (3) days pay in lieu of notice, or any combination of either, to meet the above requirement.

Section 6. An employee on lay off from one facility shall be given the opportunity to fill permanent vacancies in any other facility that is a party to this Agreement on the basis of their seniority and ability to do the job. Such employee will retain his accrued vacation benefits and shall not have to serve another probationary period. If hired, seniority will commence with the first date of service in the new facility. Any employee who accepts this option shall lose all recall rights with their previous facility.

Section 7. An employee on lay off status from one facility may apply for employment at any nursing home, party hereto, by submitting their name, job classification, total seniority, current telephone number and mailing address to each nursing home at which they wish to be considered for employment.

Section 8. The Employer shall post job openings in a nursing home in accordance with the provisions of this Agreement. In the event no employees from that facility apply for a permanent Job opening, the laid off employee, if any, with the most seniority who has the ability to do the job shall be given the job.

## ARTICLE VII. GRIEVANCE PROCEDURE

Section 1. A grievance, subject to the following procedure, may include any and all disciplinary actions taken by the Employer, questions and disputes involving contract interpretations, and questions and disputes involving conditions of employment.

All unsettled grievances, as defined above, shall be subject to the following procedure:

<u>STEP 1:</u> An employee having a grievance shall present it to their department head within five (5) working days after the event giving rise to the grievance. The employee may be accompanied by their steward if they so desire or if requested by management;

<u>STEP 2:</u> If the grievance is not satisfactorily settled at Step 1., the employee and/or steward shall reduce the grievance to writing and submit a copy to the Administrator within five (5) working days after the grievance was presented to the department head in Step 1.;

<u>STEP 3:</u> If the grievance is not satisfactorily settled at Step 2., the employee, steward and Union Representative shall appeal the grievance to the owner or owner's designee within five (5) working days after the grievance was presented in writing to the Administrator in Step 2. The owner or owner's designee shall meet with the employee, steward and Union Representative and discuss the grievance. The owner or owner's designee shall give a written answer to the grievance to the Union Representative within five (5) working days after such grievance meeting.

*If the Union Representative is unable to attend, the Union may designate the steward to act in the Union Representative's place at the Third Step grievance and meeting.*

*The Employer shall release the steward without loss of pay from his/her duties to act in the Union Representative's place at the Third Step of the grievance procedure.*

<u>STEP 4:</u> If the grievance is not satisfactorily settled at Step 3., the Union may appeal the grievance to arbitration within sixty (60) calendar days after receipt of Management's written answer in Step 3. The processing of said grievance shall be in accordance with the voluntary rules and regulations of the American Arbitration Association.

The party submitting a grievance for arbitration shall have the option of submitting such matter to the Federal Mediation and Conciliation Service for administration of such arbitration.

<u>Section 2.</u> The cost of arbitration shall be shared equally by the Employer and the Union.

<u>Section 3.</u> The decision of the arbitrator shall be final and binding on both parties and the Award of the arbitrator shall be enforceable as the agreement of the parties, at law or in equity, in any circuit court having jurisdiction thereof, as an award rendered in a proceeding under Michigan Complied Laws s423 9d and amendments thereto, or in any federal court having jurisdiction thereof.

<u>Section 4.</u> The Employer shall provide the Union, on the effective date of this Agreement, and immediately thereafter upon the effectuating of any changes therein, the names of the Administrator and the name or names of the respective department heads to whom grievances are to be directed, pursuant to the Steps outlined in Section 1 of this Article.

<u>Section 5.</u> In computing the time limits above, Saturdays, Sundays and Holidays are excluded.

<u>Section 6.</u> Every employee has a right to meet with their steward when the employee believes that he has a grievance. Such meeting shall not cause an undue disruption of work.

Section 7. Meetings may be held between the Employer Representatives and Union's Representatives for the purpose of handling grievances and the discussion of other problems upon request of either party. These meetings may be cancelled only by mutual consent and additional meetings may be held by mutual consent. This provision may not be used to hold up the settlement of formal grievances beyond the time limits stipulated in the above sections.

Section 8. During the term of this Agreement the Union will not cause or permit its members to cause any strike, work stoppage, or slowdown against the Employer. Any employee in violation of this section may be disciplined by the Employer up to and including discharge. The Company agrees that there shall be no lockout during the term of this Agreement.

Section 9. No grievance shall be considered unless each step of the grievance procedure shall have been taken within the time provided. The answer of the Employer at any step shall be considered a final determination of the grievance unless the grievance shall be properly processed to the next step of the procedure within the times provided or within a mutually agreeable extension period. In the event the Employer fails to answer a grievance at any step of the grievance procedure within the time limit, the grievance shall be deemed settled based an the last settlement demanded by the Union.

## ARTICLE VIII. DISMISSALS

Section 1. After completion of the probationary period, no employee shall be dismissed without just and sufficient cause. Should the employee wish to contest a dismissal, suspension, lay-off or termination, written notice thereof shall be given to the Employer and the Union within five (5) working days in which event the issue shall thereafter be submitted to, and determined under the grievance procedure specified in Article VII, Section 1., commencing with Step 3., of this Agreement.

Section 2. The Employer shall notify the Union steward, in writing, of any dismissals, reprimands and suspensions and the reasons for such dismissals.

Section 3. Written reprimands shall not be valid unless a copy of such reprimand was presented to the affected employee within three (3) scheduled work days of the alleged violation or within three (3) scheduled work days after the Employer should have reasonably been aware of the alleged violation but in no event more than seven (7) calendar days after the date of the alleged violation or thirty (30) calendar days for alleged patient abuse.

Section 4. Disciplinary action taken against an employee shall not be used against the employee for further disciplinary purposes after twelve (12) months from the date of issue.

## ARTICLE IX. NOTICES TO UNION

Section 1. A bulletin board will be provided by the Employer which may be used by the Union in posting notices of the following types: Notices of recreational and educational events; notices of elections; notices of results of election; notices of meetings.

Section 2. The Employer shall give the Union written notice of its intention to establish any new classification. Upon receipt of said notice, the parties will immediately negotiate the wage rate therefore and upon reaching agreement as to said wage rate, the new classification and wage rate therefore will be incorporated in this Agreement and made a part hereof.

This negotiation is not intended as and shall not be construed as a contract termination and the remainder of this Agreement shall remain in full force and effect.

If agreement is not reached by the parties on a new wage rate, the matter shall be submitted to arbitration in accordance with Article VII of this Agreement, provided that the arbitrator shall be limited to a new wage rate no greater than ten (10%) per cent above the highest related job classification wage rate set forth in Appendix "A".

## ARTICLE X. VACATIONS

Section 1. Employees will be granted vacations with pay in accordance with the following schedule:

One (1) week of vacation with pay after completion of one (1) year of employment;

Two (2) weeks of vacation with pay after completion of two (2) years of employment I t;

Three (3) weeks of vacation with pay after completion of four (4) years of employment,

Four (4) weeks of vacation with pay after completion of ten (10) years of employment and each year thereafter;

Five (5) weeks of vacation with pay after completion of twenty (20) years of employment and each year thereafter.

In no event will an employee receive less paid vacation than received on or before November 14, 1975.

Section 2. Employees may make written request for the vacation period of their respective choice on a notice posted for this purpose by the Employer during the period January 1st to May 1st of each year.

(a)     Where conflict occurs between two (2) or more employees in a given classification who desire the same vacation period, their seniority, as determined by the computing of the hours actually worked by the affected employee, shall be the determining factor, and all affected employees will be notified of such determination.

(b)     After April 30th employee will not be permitted to exercise their seniority rights, with respect to vacation scheduling, against any employee whose vacation was scheduled during the vacation scheduling period.

(a)    The employee must request the medical leave of absence in writing;

(b)    The employee must submit a physician's statement giving the reason for such leave and the expected date the employee will return to work;

(c)    Employees unable to return to work on the date established by the physician shall submit a written request for an extension of the leave with the physician's statement of reason for extension and the new expected date for return to work;

(d)    Medical leaves of absence shall be for a maximum of three (3) months and may be extended for a maximum of three (3) additional three (3) month periods.  The maximum medical leave including extensions shall not exceed twelve (12) months;

(e)    It is recognized that circumstances may prevent an employee from filing a written request for a medical leave of absence immediately, in which case the employee shall submit their written request as soon as possible;

(f) The Employer shall give the employee written notice of approval or denial of the request within three (3) working days after receipt or such request shall automatically be granted.

Section 14.  Each employee shall be entitled to use up to two (2) earned sick leave days each contract year for other than sick leave purposes.  Employees shall give a twenty four (24) hour notice prior to using a paid sick leave day for such purpose.  Employees may not use two (2) days consecutively under this provision.

Section 15.  In the event the Employer believes an employee returning from any absence due to illness is not medically able to return to work, the Employer may require the employee to be examined by a licensed medical doctor.  The Employer shall make all arrangements for such examination including direct payment of all physician fees and other costs, by the Employer.  In the event the employee disagrees with the findings of such examination the Union and the Employer shall request a competent Physician from the staff of Harper-Grace Hospitals, other than the employee's or Employer's Physician, to examine the employee, whose finding shall be conclusive.  The cost of such examination shall be paid by the Employer in the event the physician finds the employee able to return to work the Employer shall reimburse the employee for all lost wages.

## ARTICLE XII.  INSURANCE

Section 1.  The Employer shall provide each employee with term life insurance coverage of $5,000 and Accidental Death & Dismemberment insurance coverage of $5,000.

(a)    The Employer shall provide each employee with documentation defining their rights and benefits under said policy and the opportunity to name their beneficiaries thereunder.

14

**Section 5.** Any employee who is required to appear as a witness in any judicial or governmental agency proceeding shall be granted the leave time necessary to appear. Employees shall provide the Employer with proof of appearance upon request.

**Section 6.** Female employees shall be entitled to maternity leave with accrued seniority. Maternity leave shall commence and end on the date set by the employee's physician. The employee shall be reinstated to their former job with the prevailing rate of pay and benefits on the date set by the employee's physician, for up to three (3) months postpartum, unless medical complications necessitate a longer period. Female employees shall immediately, upon their knowledge of being pregnant, notify the Employer of their condition and bring in a doctor's note as to their ability to perform specific job duties.

Employees returning to work within three (3) months postpartum and who do not have medical complications shall be returned to the first available job opening within their classification and former shift

**Section 7.** Request for personal leave of absence will be granted only if the schedule of the Employer provides adequate coverage for the work of the department. In the event of an emergency, leave shall be granted immediately. In considering leaves of absence, priority shall be given in the order requests are received. However, the Employer agrees to grant a written leave of absence not in excess of three (3) months to an employee, providing adequate reason can be shown. To be eligible for a personal leave of absence, an employee must have completed the probationary period.

No leave of absence shall be granted to any employee for purposes of seeking employment elsewhere. Any employee while on authorized leave of absence who shall be employed elsewhere, shall be subject to discharge and forfeiture of all benefits under this Agreement.

**Section 8.** The Employer agrees to abide by the provisions of the Selective Service Act and its judicial interpretations with respect to leaves of absence due to military service including National Guard duty.

**Section 9.** Anyone hired as a replacement for an employee on leave of absence shall be given notification, in writing, to that effect and notice shall be furnished to the Union.

**Section 10.** Seniority only shall continue to accrue during unpaid authorized absences of less than thirty (30) days during any one (1) seniority year.

**Section 11.** Any leave of absence may be extended by mutual agreement, in writing, of the Employer and the employee, with notification to the Union.

**Section 12.** Employees returning from an authorized leave of absence shall be reinstated to their former job and shift with the prevailing rate of pay, benefits and working conditions.

**Section 13.** Employees shall be entitled to medical leaves of absence subject to the following conditions:

Section 2.  The Employer shall provide one (1) of the following insurances for each employee, at no cost to the employee.  Each employee shall select which coverage they desire within thirty (30) calendar days after the signing of this Agreement or completion of their probationary period, whichever is later.  Thereafter, employees shall be permitted to change insurance coverage only during the month of January each year.

(a)     Maintain existing health insurance.  Management may change insurance carriers upon sixty (60) days written notice to the Union provided there is no reduction in any benefits.

(b)     Disability coverage of *One Hundred ($100.00)* dollars per week for a maximum of fifteen (15) weeks.  Disability pay shall commence on the first day when an employee is hospitalized or on the eighth (8th) day of an illness not requiring hospitalization.  Disability pay shall be issued on each regular payday occurring during said disability leave.  *Part time employees who work more than 24 hours per week but less than 40 hours per week and have been employed for one year shall receive sick and accident insurance which shall provide a benefit of $50.00 per week for a period of seven weeks, effective upon ratification.*

(c)     All employees hired on or before July 31, 1984, will continue to receive insurance coverage in the future regardless of the number of hours they work.  Employees hired after July 31, 1984 who regularly work twenty-four (24) hours or less will not receive insurance set forth in Sections 1 and 2 of this Article.

(d)     *The parties agree to open the contract during the term of this agreement upon request of the Union to consider a Union-sponsored health insurance plan.  The Union agrees that any health insurance plan submitted must have benefits which are the same or better than the employee's current plan at an equal or less cost to the employer.*

*In the event the benefits to the employees become less than the employer's current plan or the cost to the employer increases above the current cost under a Union-sponsored health insurance program, the employer shall retain the right to solicit bids from other health insurance providers, reserving the right to the Union to match said competitive bid.*

Section 3.  The Employer shall provide each employee with documentation defining their rights and benefits under one of the above policies.

Section 4.  The Employer shall, at all times, carry Worker's Compensation Insurance in a sufficient amount to provide adequate coverage and protection.

(a) The Employer shall post all applicable information pertaining to the employee's rights thereunder and the procedure for obtaining same.

Section 5.  The Employer shall, regardless of the number of employees in its employ, become and remain a subject Employer under the terms of the Michigan Employment Security Commission for the contract term.

Section 6. The Employer shall continue to provide life insurance, hospitalization coverage and disability insurance for employees on authorized medical leaves of absence.

Section 7. Pension The Employer shall submit to the Union an ERISA qualified, defined contribution pension plan on or before February 1, 1997. Such plan shall include at least one (1) trustee appointed by the Union. The plan shall provide for Employer contributions of not less than ten (S. 10) cents per hour worked for each bargaining unit employee.

In the event the Employer decides not to develop a new pension plan, the Employer agrees to become a participating Employer in the Service Employees National Industry Pension Plan and contribute ten (S.10) cents per hour worked for each employee in the bargaining unit effective May 1, 1997. *Effective May 1, 1999, the Employer agrees to contribute an additional S.10 per hour worked for each employee (total S.20 per hour) to the SEIU Plan.*

## ARTICLE XIII.  JOB OPPORTUNITIES

Section 1.  All bargaining unit job openings shall be posted on the Union Bulletin Board for a minimum of four (4) calendar days. Any bargaining unit employee from the facility where the job opening exists who wishes to apply for a posted job opening may do so.

(a)    In the event more bargaining unit employees apply than there are positions available, seniority among the bargaining unit employees with the ability to perform the job shall determine who will be awarded the job opening;

(b)    In the event that two or more employees with the same seniority apply for a job opening, the employee selected shall be determined by actual hours worked,

(c)    Employees awarded a job opening shall have a thirty (30) calendar day trial period during which time they may voluntarily return or may be returned by the Employer for inability, to their former job without loss of seniority or any other contract benefits;

(d)    In the event a job opening is not filled in accordance with sub-sections (a) (b) and (c) above, the job opening shall be filled in accordance with Article VII., Lay-Off and Recall.

(e)    In the event a job opening is not filled in accordance with sub-sections (a) (b) (c) and (d) the Employer may hire new employees to fill the job opening.

Section 2.  In the event of vacancies, part-time employees with the necessary qualifications shall be afforded the opportunity to become full-time employees before a new employee is hired.

Section 3. Employees filling vacancies shall have the right to their former job without loss of seniority or any other contract benefits during the period of ninety (90) days following the start of their new job.

# ARTICLE XIV. GENERAL

<u>Section 1.</u> The Employer shall not discriminate under any circumstances because of age, race, creed, color, sex, political beliefs, union activity, marital status or national origin.

<u>Section 2.</u> Every employee shall be treated with the respect they are expected to return.

<u>Section 3.</u> An employee leaving the employ of the Employer shall, upon request, be furnished with a written reference of service.

<u>Section 4.</u> The Employer may require employees to wear uniforms and determine the color of same, however, the style of such uniforms shall be determined by the employee, and be appropriate for the work to be performed. In the event the Employer requires a change in the color of uniforms previously required, the Employer shall furnish two (2) such new uniforms to the employees at no cost to the employees.

<u>Section 5.</u> Payroll deductions shall be made upon signed authorizations by the employee, for the purchase of Government Savings Bonds and/or for deductions for the Service Employees' Credit Union.

<u>Section 6.</u> Non-bargaining unit employees will not perform work of the bargaining unit except for purposes of training or instruction or in cases of emergency beyond the control of the Employer.

<u>Section 7.</u> The Employer agrees that there shall be no subcontracting of any work or services covered under the terms of this Agreement except as herein provided:

(a)    In the event the Employer desires to sub-contract any such work or services, he shall:

1.    Give the Union seven (7) days notice, in writing;

2.    Present to the Union, in writing evidence that such sub-contractors agree to assume all of the terms and conditions of this Agreement; and,

3.    Advise the number of work positions to be displaced, if any in the event of such sub-contracting as herein provided, no regular employee shall lose his job or suffer any loss of wages or other benefits; however, it is recognized that normal attrition through retirement, death, discharge for cause or voluntary quit, will tend to reduce the number of jobs. The Employer agrees to utilize every employee displaced as a result of such sub-contracting in other assignments within the employee's department on the basis of seniority and ability. The wages and benefits of such displaced employee shall not be reduced below the wages and benefits of their former jobs. Such displaced employees shall receive all increases in wages and benefits as all other employees during the contract term. The replacement of such displaced employee shall not result in the lay-off of any regular employee or in the bumping or change of job of any regular employee. In the event the Job displaced by sub-contracting is reinstated or the

subcontract is terminated, such job shall be assigned to the former employee based on his seniority in that job.

Section 8. Pay day shall be every other Friday. Employees shall receive their pay checks during their work shift on payday. Employees not scheduled to work on the day shift of a payday may receive their paychecks on the day preceding payday. Employees shall receive their paychecks at the nursing home in which they work.

Section 9. There shall be no passing of medication by employees other than those allowed by law.

Section 10. The Employer shall pay for all physical examinations that are required by the Employer and performed by the physician of the Employees choice.

Section 11. Employees shall not be required to work out of their respective classification with the exception of an emergency situation beyond the control of the Employer.

Section 12. Involuntary shift transfers shall be made on the basis of seniority, with the least senior employee in a classification being transferred first.

Section 13. The Employer shall give all personal communications, correspondence, letters and disciplinary notices to an employee in a sealed envelope. Personal discussions with an employee shall be held privately.

Section 14. The Employer shall comply with the provisions of the Occupational Safety and Health Act of 1970.

Section 15. If any provision of this Agreement is or becomes in contravention of the laws or regulations of the United States or State of Michigan, such provision shall be suspended by the appropriate provision of such law or regulation so long as the same is in force and effect, but all other provisions of this Agreement shall continue in full force and effect. The provision being in contravention of such law or regulation shall be renegotiated by the parties in order that there will be no such contravention. If the parties are unable to renegotiate, the matter will be settled as a grievance.

Section 16. The Company hereby agrees to honor contribution deduction authorizations from Its employees who are Union members in the following form:

"I hereby authorize the Company to deduct from my pay the sum of $_____ from each of my regular paychecks and to forward that amount to the SEIU, COPE, PCC, This authorization is voluntarily made on the specific understanding that the signing of this authorization and the making of payments to the SEIU, COPE PCC are not conditions of membership in the Union or of employment with the Company and that the SEIU, COPE, PCC will use the money it receives to make political contributions and expenditures in connection with federal, state and local elections."

Section 17. The Employer shall allow each regular steward (excluding alternates) up to two (2) days off with pay each year for attendance at steward training classes, upon two (2) weeks written notice to the Employer. The number of stewards eligible shall be limited to the same number existing in each nursing home on November 15, 1978.

Section 18. The Employer shall pay each employee on the Union Negotiating Committee their regular rate of pay for all time spent in contract negotiations, which they would otherwise be regularly scheduled to work.

Section 19. (Snow Emergency) Workers delayed for up to two (2) hours in reporting to work during a snow emergency declared by the City of Detroit shall be paid for their entire shift.

Section 20. (Life Insurance/Retirees) Management shall provide conversion option for life insurance for retirees paid for by the employee.

Section 21. (Contagious Disease) Management will notify workers in writing of any contagious or communicable disease in the facility.

Section 22. (Pay Shortage) The Employer agrees that whenever an employee suffers a substantial pay shortage through no fault of the employee, the Employer shall make whole to the employee the full amount due within seventy-two (72) hours (three (3) work days) from the time the incident is substantiated.

Section 23. (Union Visit To Facility) Official representatives of the Union will be permitted to visit the Employer's facility to ascertain that the provisions of this Agreement are being observed and to confer with employees covered by this Agreement during their non-work time and in non-work areas. Access to the facility during all working hours for the above stated reasons shall not be denied.

Provided such visitation does not interfere with the employee's work responsibilities.

Section 24. (New Employee Orientation) The Employer agrees to allow the Stewards thirty (30) minutes with each new hire to provide them with a copy of this Agreement and explain to them their rights and obligations as members of the bargaining unit.

## ARTICLE XV. WAGES

Section 1. Attached hereto as Appendix "A" is the wage schedule for employees covered by this Agreement which has been agreed upon by the parties and made a part of this Agreement.

Section 2. No employee shall suffer through the operation of this Agreement a wage loss or loss of benefits now enjoyed or enjoyed prior to the execution of this Agreement.

Section 3. Employees required to perform work normally performed by employees in a different job classification, which has a higher wage rate, shall be paid at the higher rate for the number of hours worked in the higher job classification.

# ARTICLE XVI. SUCCESSION

Section 1. The Employer agrees that in the event of any sale, conveyance, transfer or assignment of any or all the operations covered by this Agreement, a condition of such sale, conveyance, transfer or assignment will be recognition of the Union in the existing, appropriate multi-facility bargaining unit, assumption of the obligations under this Agreement, and retention of all employees covered by this Agreement.

Section 2. Any Employer failing to comply with the above paragraph shall automatically assume any obligation arising from the failure to do so.

Section 3. If the Employer shall move the facilities covered by this Agreement the employees affected by said move shall be given the first opportunity to obtain employment at the new facility in their same job classification and their same rate of pay at the new facility; and further, as the employing industry in such instance would remain the same, this Agreement shall cover the bargaining unit in any such facility. In the event that the majority of the employees at the new facility are not former members of the bargaining unit, it is agreed by the Employer that recognition will be granted to the Union and that this Agreement will cover all the employees at the new facility upon submission by the Union of membership cards of a majority of said new employees.

Section 4. The Employer agrees to give the Union immediate written notice of any and all creditor's and/or bankruptcy proceedings instituted by the Employer or its creditors.

Section 5. The Employer agrees to give the Union immediate written notice of any change in its status by virtue of governmental action.

Section 6. The Employer agrees to give the Union ten (10) days advance written notice of consummation of an agreement providing for the sale, conveyance, transfer or assignment of any or all the operations covered by this Agreement, and simultaneously, to provide the Union with all portions of such agreement which relate to and-affect employees' terms and conditions of employment.

# ARTICLE XVII. MANAGEMENT PREROGATIVES

Section 1. Unless specifically otherwise provided for herein, the right to hire, lay-off, promote, transfer and discharge for cause, to maintain the efficiency of employees, and to determine the schedules of work, are management prerogatives, provided, however, that any grievance arising out of lay-off, promotion, transfer or discharge for cause, shall be subject to the review through the grievance procedure as set forth herein.

# ARTICLE XVIII. UNION RECOGNITION

The Employer agrees that it will remain neutral on the question of employee representation by the Union at any of its facilities. The Employer agrees that it will not take any action or make

any statement that directly or indirectly implies opposition to employees being represented by the Union at any of its facilities.

In the event the Union seeks to represent any employees in classifications covered by this agreement, not currently represented at any of the Employer's facilities, the Employer will recognize the Union upon submission of signed Union authorization for representation cards signed by a majority of the employees to be represented.

# ARTICLE XIX. HEALTH & SAFETY

Section 1. Management agrees to at least one annual mandatory in-service training provided by the Union on general health and safety issues of concern to both Management and the Union.

Section 2. The Employer shall make work assignments in a reasonable manner consistent with the needs of the patients and the orderly operation of the Employees business. Employees shall not refuse work assignments that are not hazardous to their own personal safety.

Section 3. Employees shall not be required to work in any nursing home other than the nursing home in which they are employed.

# ARTICLE XX. PATIENT CARE

Section 1. Staffing Regulations: The parties agree that adequate staffing is a necessary requirement for quality patient care. To that end, the Home agrees to work cooperatively with the Union in its efforts to increase state staffing standards.

# ARTICLE XXI. SEVERANCE PAY

Section 1. The Employer agrees that in the event it discontinues its operations or any part thereof whether by sale, conveyance, transfer, assignment, or voluntary closing, employees who are laid off during the preceding thirty (30) days and subsequent sixty (60) day periods shall be given severance pay of $250. 00 for each year of seniority which shall be prorated for each partial year of seniority and the Employer shall continue to provide life insurance, hospitalization coverage and disability insurance for two (2) months following the month of lay-off.

# ARTICLE XXII. DURATION and AMENDMENT

The terms of this Agreement shall become operative on the first day of May, 1998, and shall continue to be in operation thereafter through the 30th day of April, 2001, and shall be automatically renewed from year to year thereafter unless either party hereto gives to the other party a notice in writing not less than ninety (90) days prior to the first day of May, 1998, or not less than ninety (90) days prior to the first day of May each year thereafter, of a desire to modify or terminate this Agreement, provided, however, that in the event of any sale, conveyance, transfer, or assignment of any or all of the Employees operations, that this Agreement shall terminate with the present Employer and will continue in full force and effect with the buyer, transferee or assignee that it will recognize the Union in the existing appropriate multi-facility

bargaining unit, assume the obligations under this Agreement, and retain all employees covered by this Agreement.

## APPENDIX "A"

## WAGE-SCHEDULE

MINIMUM HOURLY WAGE RATES AFTER COMPLETION OF THE PROBATIONARY PERIOD:

CLASSIFICATION

EFFECTIVE OCTOBER 1, 1998 – WESTWOOD*
EFFECTIVE JANUARY 1, 1999 - ALL OTHERS

DIETARY DEPT.

| | 60 Days | 6 Months 1040 Hours P/T | 1 Year 2080 Hours P/T |
|---|---|---|---|
| Cook I (cooks lunch and dinner) | 7.98 | 8.23 | 8.73 |
| Cook II (swing relief cook) | 7.93 | 8.18 | 8.68 |
| Cook III (cooks breakfast) | 7.88 | 8.13 | 8.63 |
| Cook IV (cook helper) | 7.73 | 7.98 | 8.48 |
| Dietary Aide | 7.58 | 7.83 | 8.33 |

HOUSEKEEPING DEPT.

| | 60 Days | 6 Months | 1 Year |
|---|---|---|---|
| Housekeeping Employee | 7.58 | 7.83 | 8.33 |

MAINTENANCE DEPT.

| | 60 Days | 6 Months | 1 Year |
|---|---|---|---|
| Maintenance Employee | 7.58 | 7.83 | 8.33 |

NURSING DEPARTMENT

| | 60 Days | 6 Months | 1 Year |
|---|---|---|---|
| Nursing Attendant (Nurse Aide and Orderly) | 7.58 | 7.83 | 8.33 |

*The above stated wage scale includes the 1ˢᵗ year wage increase for the period of May 1, 1998 through April 30, 1999 as it is the wage pass through approved by the State of Michigan for the fiscal year 1998-1999.

*The following are the wage increases for the second and third years of the Contract:*

    a.    *Second year of the contract (May 1, 1999 – April 30, 2000)*

*The employer will apply for the full amount of the wage pass through approved by the State of Michigan for the fiscal year 1999-2000 to be paid retroactive to the date the Employer becomes eligible for the wage pass through.*

    b.    *Third year of the contract (May 1, 2000 – April 30, 2001)*

*The employer will apply for the full amount of the wage pass through approved by the State of Michigan for the fiscal year of 2000-2001 to be paid retroactive to the date the Employer becomes eligible for the wage pass through.*

    c.    *Should no wage pass through be granted by the State of Michigan for the term of this contract, or in the event the wage pass thru increase in any year results in less than an increase to the employees of $.25/hr., the parties agree to meet and negotiate wages only reserving the Union the right to strike and the employer the right to lockout as to wages only.*

TENTATIVE AGREEMENT

APPENDIX "A"

WAGE SCHEDULE

MINIMUM HOURLY WAGE RATES AFTER COMPLETION OF THE PROBATIONARY PERIOD:

| Classification | Effective October 1, 2000 - Westwood* Effective January 1, 2001 - All Others | | |
|---|---|---|---|
| | 60 Days | 6 months 1040 Hours P/T | 1 year 2080 Hours P/T |
| **Dietary Dept.** | | | |
| Cook I (cooks lunch & dinner) | 8.45 | 8.78 | 9.90 |
| Cook II (swing relief cook) | 8.45 | 8.78 | 9.85 |
| Cook III (cooks breakfast) | 8.45 | 8.78 | 9.80 |
| Cook IV (cook helper) | 8.45 | 8.78 | 9.65 |
| Dietary Aide | 8.45 | 8.78 | 9.50 |
| **Housekeeping Dept** | | | |
| Housekeeping Employee | 8.45 | 8.78 | 9.50 |
| **Maintenance Dept.** | | | |
| Maintenance Employee | 8.45 | 8.78 | 9.50 |
| **Nursing Dept.** | | | |
| CENAs | 8.45 | 8.78 | 9.50 |

*The above stated wage scale includes the first year negotiated wage increase for the period of May 1, 2001 through April 30, 2002 as it is the wage pass through approved by the State of Michigan for the fiscal year 2001.

# ADDENDUM AGREEMENT

Addendum Agreement between Service Employees International Union Local 79, AFL-CIO and Alpha Annex, Alpha Manor, Barton, Eastwood, New Detroit, Qualicare, & Westwood Nursing Homes.

Effective May 20, 2002, all eligible employees shall receive twenty-five (.25) cent across the board into their wage rate/scale.

Effective October 1, 2002, all eligible employees shall receive twenty-five (.25) cent across the board into their wage rate/scale.

Duration - May 1, 2001 thru April 30, 2003

General - All other provisions in the contract agreed to shall stay the same.

## FOR THE EMPLOYER

Daniel James: Barton & New Detroit

Charles Dunn: Alpha Annex & Westwood

Muhammed Qazi: Eastwood, Alpha Manor & Qualicare

## FOR THE UNION

Willie Hampton, President

Joyce Pearson, Bus. Rep.        5/23/02

## BARGAINING COMMITTEE

# ADDENDUM AGREEMENT

### Appendix "A" - Wage Schedule

Minimum hourly wage rates after completion of the probationary period.

Effective May 20, 2002, Alpha Annex, Alpha Manor, Barton, Eastwood, New Detroit, Qualicare, & Westwood Nursing Homes.

| Classification | 60 Days | 6 months 1040 hours p/t | 1 year 2080 p/t |
|---|---|---|---|
| **Dietary Dept** | | | |
| Cook I (cooks lunch & dinner) | $8.70 | $9.03 | $10.15 |
| Cook II (swing relief) | $8.70 | $9.03 | $10.10 |
| Cook III (cooks breakfast) | $8.70 | $9.03 | $10.05 |
| Cook IV (cooks helper) | $8.70 | $9.03 | $9.90 |
| Dietary Aide | $8.70 | $9.03 | $9.75 |
| **House Keeping Dept.** | $8.70 | $9.03 | $9.75 |
| **Maintenance Dept.** | $8.70 | $9.03 | $9.75 |
| **Nursing Dept.** | | | |
| C.E.N.A. | $8.70 | $9.03 | $9.75 |

The above wage scale includes the year May 20, 2002 through September 30, 2002.