## STATEMENT OF POLICY FOR
## COLLECTION OF DELINQUENT CONTRIBUTIONS
(Revised November 15, 2003)

The Board of Trustees of the Service Employees International Union Health and Welfare Fund ("Fund") hereby adopts the following policy for the collection of delinquent contributions.

### SECTION 1
### General Policy

It is the policy of the Fund to make such diligent and systematic efforts as are appropriate under the circumstances to collect all employer contributions when they are due.

The Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), including but not limited to:

1. The right to establish a date on which contributions are due and the format in which remittance reports supporting such contributions must be made, provided that such date and format requirements are not inconsistent with the terms of the collective bargaining agreement;

2. The right to recover interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in collecting any delinquency;

3. The right to establish a payroll review program;

4. The right to conduct a review of the payroll records of all employees of the employers required to contribute to the Fund including, but not limited to, payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the employers that are necessary in order for the auditor to give an unqualified opinion that the proper contributions have been made;

5. The right to require a participating employer to pay the cost of a payroll review plus interest, liquidated damages, attorneys' fees, and any other expenses incurred by the Fund in determining the amount of a delinquency and in collecting the delinquency;

6. The right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to the Fund;

7. The right to take all other steps and to perform all other acts that are necessary in order to collect contributions due to the Fund in a timely and expeditious manner; and

8. The right to terminate a delinquent employer's participation in the Fund in appropriate circumstances, as determined by the Trustees in their sole discretion.

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

## SECTION 2
## Collection Procedure

In accordance with the Trust Agreement, ERISA, and the above declaration policy, the following procedures shall be required of all participating employers and the steps set out below shall be taken by the Fund Office to effectuate the collection of delinquent contributions.

1. <u>Contributions and supporting remittance reports are due on the date the employer's collective bargaining agreement requires payment.</u> If the collective bargaining agreement does not state a due date, the due date is as follows: (a) if there is immediate coverage (available only to employers paying monthly rates), payment is due by the 15th day of the previous month (*i.e.*, contributions due by the 15th of December provide eligibility for January) or (b) if there is delayed eligibility (available to employers paying hourly or monthly rates), contributions are due by the 15th of the month after the month worked. (*i.e.*, contributions for the month of January are due by the 15th of February and provide eligibility for the month of March).

2. Initial contributions and supporting remittance reports for employers who are newly subject to collective bargaining agreements (*i.e.*, for all months necessary to bring the employee group current) are due no later than the 15th day of the month following the month in which the collective bargaining agreement was executed by the bargaining parties.

3. Retroactive contributions made on behalf of probationary employees shall be considered timely made if paid by the 15th of the month following the month in which the relevant probationary period expired.

4. Contributions shall not be regarded as having been made timely unless accompanied by a completed remittance report in the format required by the Fund. If contributions are received without an acceptable remittance report, liquidated damages will be charged as set forth in paragraph 5 below. The Executive Director may approve the submission of reports in other forms, including on magnetic media, if he determines that providing reports in such form will not cause additional burden or expense to the Fund.

5. If contributions and supporting remittance reports are <u>not received by the end of the month in which they are due, the employer shall, in addition to the underlying delinquent contributions owed, be obligated to pay</u> to the Fund interest. Interest shall be calculated from the due date for the delinquent contributions at the rate of ten percent <u>(10%) per annum. In addition, the</u> employer's employees will <u>not be eligible for health coverage until the delinquency is paid. If contributions and supporting remittance report(s) are not received by the 30th day of the month following the month in which contributions are due,</u> liquidated damages in the <u>amount of 5% of contributions</u> (or, if greater, $50), shall also be due from the employer. Notwithstanding the foregoing, interest calculated to be less

2

than one dollar ($1.00) shall not be charged. If an employer is delinquent, the Fund reserves the right to apply future payments to the oldest amount due first, even if the amount due must be estimated.

6. If the contributions and remittance reports are not received by the last day of the month in which they were due, Fund office staff shall send a notice of delinquency to the employer requesting immediate payment of the delinquent contributions plus interest thereon. The notice shall demand immediate payment of all delinquent contributions and inform the delinquent employer that, unless the full amount due is received in the Fund's offices by the 30th day of the month following the month in which the contributions were due, the matter will be referred to the Fund's legal counsel for collection. The notice shall further advise the employer that contributions and supporting remittance reports must be received by that date if it wishes to avoid the imposition of liquidated damages.

7. If the contributions and remittance report(s) are not received by the 30th day of the month following that in which the contributions were due, the delinquency shall be referred to legal counsel. Fund office staff also shall refer to counsel the cases of employers who have accrued balances of unpaid interest or liquidated damages that equal or exceed $1,000. Legal counsel shall follow the procedures set out in Section 3 of these Rules.

8. If an employer makes payment of the amount of the delinquency but not payment of accrued interest and other amounts owed, acceptance of the payment shall not constitute a waiver of the Fund's claim for such accrued interest or other amounts.

9. Any unpaid interest or liquidated damages shall be billed to the employer on the monthly delinquency letters or pre-printed remittance forms generated each month.

10. The Executive Director may suspend collection procedures for liquidated damages and interest when extenuating circumstances are present. However, the Executive Director shall prepare a report to the Trustees of all such actions for their consideration at their next scheduled meeting. The Trustees may, at that time, waive such charges or direct that collection proceedings be reinstated.

11. There shall be a charge for retroactive corrections (adding employees omitted from a prior report) made by any employer. The employer shall be charged $50 per each corrected remittance report submitted. This fee is imposed in recognition of the fact that the Fund will be required, and will incur expenses, to ensure proper benefit eligibility for any participant who is added retroactively. The employer will also owe interest from the date the contributions should have been paid at the rate of ten percent (10%) per annum.

12. If an employer advises the Fund office that it has paid for coverage for an ineligible employee, the Trustees, in their sole discretion, may agree to grant the employer credit for one month's contributions for the month prior to the month that the Fund office is notified by the employer. The Trustees may delegate this authority to Fund office staff who will be authorized to grant such credits only if there is sufficient evidence that no benefits have been paid on the participant's behalf during the period at issue.

3

13. If an employer believes it has overpaid contributions by paying an incorrect rate or making duplicate contributions for the same employee, the employer shall bring the matter to the attention of the Executive Director. If the Executive Director determines that the employer overpaid its contributions for a period of not more than three (3) months, and that such overpayment did not result in making an otherwise ineligible employee eligible for benefits, the Executive Director may, in his sole discretion, give the employer a credit for the amount of such overpayment. If a participating employer notifies the Executive Director that it has mistakenly remitted funds that were clearly intended to be paid to another entity and the employer has no outstanding balances owed to the Fund, the Executive Director may, in his sole discretion, give the employer a refund. If a participating employer notifies the Executive that it has mistakenly submitted excess contributions because of a mathematical error on its remittance report, the Executive Director may, in his sole discretion, give the employer a refund if the excess contributions are so great that the employer would be required to take a credit for more than three months. If the employer is not a participating employer at the time the request is made and the employer has no outstanding amounts due to the Fund, a refund may be made to the employer under any of the preceding circumstances. The Executive Director shall refer to the Trustees or the Delinquency Committee described in Section 3, Paragraph 9, any requests for credit or refund for overpayment occurring during a period of more than three (3) months' duration. The Trustees or the Delinquency Committee may, in their sole discretion, authorize credits or refunds for overpayments for periods of time longer than three (3) months. All credits or refunds for overpayments shall be issued only in a manner consistent with ERISA section 403(c)(2) and Internal Revenue Code section 401(a)(2). No interest shall be due to any employer on any overpayment. No refund of excess contributions shall be granted by the Fund without a written request for such refund having been received from the employer within two (2) years from the date that such excess contributions were received by the Fund. If the Fund notifies an employer that it has an overpayment, the employer must request a refund within six (6) months from the date the Fund notifies the employer.

## SECTION 3
### Legal Action and Settlement

1. When a delinquency matter is turned over to the Fund's legal counsel for collection, legal counsel shall send a letter to the employer demanding the required remittance report, payment of the delinquent contributions and advising the employer of its liability for interest, liquidated damages and costs.

2. In the event an employer fails to pay the delinquent contributions and submit the remittance report(s) within twenty (20) days after legal counsel's demand for payment, legal counsel shall initiate legal action for any delinquent contributions in excess of $500.00, unless legal counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to the following:

    a. the financial condition of the employer,

4

    b.    the probability of collecting a judgement once it is obtained,

    c.    the employer's past performance as a contributing employer,

    d.    the amount of the delinquency,

    e.    the length of time the delinquent amount has been owed,

    f.    the likelihood that the costs of the suit will exceed the recovery; and

    g.    any other factor that, in the discretion of the legal counsel, may have a material bearing on the collection of the delinquent contributions.

Legal counsel, where appropriate, shall also file a charge under the McNamara O'Hara Service Contract Act with the Department of Labor where the employees for whom the contributions are due are performing work covered by the Service Contract Act.

Any recommendation by legal counsel against initiating suit to collect delinquent contributions shall be submitted to the Board of Trustees. A lawsuit shall not be commenced pending action of the Trustees on such recommendation. The Board of Trustees reserves the right to reject a recommendation by legal counsel and to authorize the commencement of a suit.

3.    Legal counsel is authorized to enter into settlement negotiations with delinquent employers. Without further approval of the Board of Trustees, legal counsel is authorized to settle claims against delinquent employers in instances where the delinquent employer promises immediate payment of the delinquent contributions owed, interest thereon, attorney's fees and costs. Any proposed settlement which waives or compromises those amounts must be approved by the Board of Trustees. It shall be the responsibility of Fund Counsel to advise the Fund whether, and when, to reinstate any previously waived charges.

4.    Legal counsel has the authority to reject any proposal for settlement that contemplates payment of amounts due over a period of time or if its acceptance would result in collection of less than the total amount owed. Such rejection shall be subject to the Board of Trustee's subsequent review.

5.    Any settlement may postpone the collection of interest, liquidated damages, or attorney's fees until a subsequent delinquency by the same employer, if the collection of such amounts would involve unwarranted expense or risk to the Fund. Such a written settlement providing for nonpayment of interest, late payment penalty, liquidated damages, costs or attorneys' fees may contain a reservation to the Trustees of the right to collect such amounts in the event the employer again becomes delinquent in paying contributions during a period not to exceed three (3) years after the settlement is consummated.

6.    The Board of Trustees reserves the right to accept or reject an employer's proposal to

pay delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel; provided however, that any such decision to extend the time for payment, or to compromise the amount owing, complies with Prohibited Transaction Exemption 76-1 promulgated by the United States Department of Labor.

7.  Settlements calling for payments over time or compromising the amount owed, including interest, liquidated damages, attorneys' fees, or costs, must be in writing and signed on behalf of the Fund and the employer.

8.  Notwithstanding the procedures set out in this policy, the Board of Trustees or Executive Director may refer any delinquent account to legal counsel at an earlier or later date than provided for herein where circumstances warrant that the collection action be expedited or delayed.

9.  The Trustees may appoint a Committee of at least one (1) Employer and one (1) Union Trustee to act on behalf of the Board of Trustees, as provided for under this policy.

## SECTION 4
### Payroll Review Procedure

1.  The Board of Trustees shall randomly select such number of participating employers each year for payroll reviews as it deems from time to time to be appropriate. The Board of Trustees may, at its discretion, delegate the task of selecting which employers shall be reviewed pursuant to this policy to the Executive Director. The Board of Trustees, in the exercise of their discretion, may also choose for a payroll review an employer who was not randomly selected.

2.  Unless the Trustees determine otherwise, the period covered by the payroll review shall be not less than one (1) year.

3.  The right of the Fund to conduct a review of an employer's records shall survive the termination of an employer's collective bargaining agreement, any other written agreement under which the employer is contributing to the Fund, or any bankruptcy filing.

4.  The Executive Director or his designee shall forward a letter to the employer advising it of the impending review citing the Trustee's authority to conduct the review.

5.  The auditor shall schedule the payroll review with the employer, who shall make available to the auditor all books and records which the auditor determines are required. Upon a request from the auditor, the employer shall forward the pertinent records to the auditor or make the records available to the auditor for inspection at a location in the Washington, D.C. metropolitan area. Upon approval of the Trustees, Executive Director, or the committee appointed under Section 3, Paragraph 9, the auditor may expand the scope of the payroll review to cover a longer period of time.

6

6. Where a payroll review of an employer is conducted and the payroll review discloses an underpayment, a letter shall be sent to the employer advising of the underpayment and requesting the employer to make payment of the underpayment, liquidated damages, interest, auditor's fees and attorneys' fees within thirty (30) days of the date of its receipt of the letter.

7. After the expiration of the thirty (30) day period, a second letter shall be sent to the employer demanding that the underpayment be remitted immediately. If payment is not received within ten (10) days of the date of such letter, Fund office staff will turn the matter over to Fund Counsel who will then send a third letter. If payment is not received following the third request, legal counsel shall file suit against the employer and file a Service Contract Act charge against the employer where appropriate.

8. In the event an employer refuses to permit a payroll review upon request by the Trustees or if the employer refuses the Fund auditor access to pertinent records, the Fund auditor shall refer the matter to legal counsel. In addition to legal fees and costs associated with compelling compliance, the employer shall be obligated to pay any travel expenses incurred by the auditor.

9. Legal counsel shall thereafter demand that the employer make available such books and records as are necessary for the Fund auditor to conduct the payroll review. If, within a reasonable period of time not to exceed 60 days, the records are not forwarded to the auditor or made available at a Washington, D.C. Metropolitan area location or at such other location as the Trustees may agree to, the employer shall be liable for any attorneys' fees and costs incurred by the Fund in enforcing the Fund's right to review the employer's records. If necessary, upon approval of the Trustees or Executive Director, counsel shall institute legal action to enforce the Trustees' right to conduct a payroll review and the employer shall be assessed all costs and attorney's fees incurred as a result of the employer's refusal to permit the payroll review or refusal to make available all pertinent records.

10. Employers will be billed by site whenever the net principal amounts owed are in excess of $50.00. Billings will be calculated as follows:

   a. Principal: This will be the total of the amount owed for each month showing a net underpayment during the audit period.

   PLUS

   b. Interest: Calculated monthly at 10% per annum of the principal amount.

   PLUS

   c. Liquidated Damages: Calculated at 5% of the principal amount, or, if greater, $50.

   PLUS, if applicable,

   d. Testing Fee: The testing fee will include the auditor's time and expenses in

7

performing the payroll review. The cost of the payroll review, in addition to any other applicable fees and costs, shall be payable by the employer whenever a review of an employer's record discloses principal due equal to or greater than:

(i) in the case of an employer that contributed (or should have contributed) $50,000 or more in any contract year, 5% of the employer's total required contributions for such period,

or

(ii) in the case of an employer that contributed (or should have contributed) $10,000 or more but less than $50,000 in any contract year, the lesser of

    (A) 7% of the employer's total required contributions for such period; or

    (B) $2,500

or

(iii) in the case of an employer that annually contributed (or should have contributed) less than $10,000, the lesser of

    (A) 10% of the employer's total required contributions for such period; or

or

    (B) $1,000.

The testing fee will be charged for the entire audit period whenever one of the above thresholds is met in any of the calendar years tested.

11. The Board of Trustees shall authorize the Executive Director to make decisions regarding the collection of audit billings following the advice of legal counsel. In such cases where legal counsel has advised that the cost of further collection efforts for unsubstantial amounts would not be financially prudent to pursue, the Executive Director may then instruct that no further collection efforts are to be made.

**SECTION 5**
**Interest, Liquidated Damages, Attorneys' Fees and Costs**

1. Interest owed by a delinquent employer shall be calculated from the due date for the delinquent contributions at the rate of ten percent (10%) per annum.

2. In the event a lawsuit or other legal action is filed pursuant to Section 3, and notwithstanding any other provisions of this policy, liquidated damages shall be due. The amount of the

8

liquidated damages shall be the greater of:

    a.    The interest on the delinquent contributions determined in accordance with paragraph 1 above;

or

    b.    20% of the delinquent contributions.

3.    In the event a lawsuit or other legal action is filed, attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Fund for such services, for all time spent by legal counsel in collection efforts pursuant to Section 3 hereof or in enforcing the Board of Trustees' rights to payroll reviews pursuant to Section 4 hereof.

4.    All costs actually incurred in court actions for collection of delinquent contributions to enforce the Trustees' right to conduct a payroll review of the employer's records shall be assessed against the delinquent employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to the Fund.

5.    The obligations to pay interest, liquidated damages and fees chargeable under this policy are contractual in nature and independent of the provisions of ERISA Section 502(g). In consideration for permitting its participation, or continued participation, in the Fund, each contributing employer agrees to be obligated to pay all interest, liquidated damages, fees, and costs chargeable pursuant to this policy.

6.    Liquidated damages are provided herein because actual damages are not susceptible of precise prediction. Liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses caused by a delinquency. Such costs include, but are not limited to, expenses related to staff employees who must be assigned to collection activities, legal expenses, and expenses for additional accounting and reporting activities.

### SECTION 6
### Reports and Records

1.    Legal counsel and the Executive Director shall each prepare a delinquency report to be presented at each Board of Trustees meeting. The report shall show all employers that are delinquent. The determination of the Board with respect to action on such delinquencies, and the specific bases therefore, shall be recorded in the minutes.

2.    The Executive Director shall maintain a file of currently effective collective bargaining agreements and other agreements detailing the basis upon which employers are obligated to make contributions to the Fund.

### SECTION 7
### Effective Date

The revisions to this Policy shall be effective December 15, 2003.

9

## COMPARISON OF OLD AND NEW HEALTH & WELFARE COLLECTION POLICIES

| Date | Old Policy | New Policy (Effective 12/15/03) |
|---|---|---|
| 1/15/04 | Contributions and reports due | Contributions and reports due |
| 2/1/04 | Fund demand letter #1 sent **Liquidated damages = 5%** of contributions ($50 min) | Fund demand letter #1 sent **Interest = 10% per annum** (from due date) **terminate eligibility** |
| 3/1/04 | Fund demand letter #2 sent | Refer to counsel **Liquidated damages = 5%** of contributions ($50 min) |
| 4/1/04 | Refer to counsel **Liquidated damages = 10%** ($75 min) **Interest = 10% per annum** (from due date) **terminate eligibility** | |

*[handwritten annotation: "now ref. to counsel only 45 days"]*